UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-22932-BLOOM/Louis

MINDY EASTERWOOD,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court upon Plaintiff Mindy Easterwood's ("Plaintiff") Motion for Sanction for Spoliation and Adverse Inference, ECF No. [75] ("Motion"). Defendant Carnival Corporation ("Defendant") filed a Response in Opposition, ECF No. [100] ("Response"), to which Plaintiff filed a Reply, ECF No. [107] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I. BACKGROUND**

On July 16, 2019, Plaintiff initiated the instant action against Defendant for personal injuries she sustained while onboard Defendant's cruise ship. ECF No. [1] ("Complaint"). The Complaint alleges that on June 7, 2019, while walking on the pool deck of the Carnival *Paradise* cruise ship, Plaintiff stepped on what appeared to be mechanical grease, slipped and fell, resulting in serious injuries. *Id.* ¶¶ 9-11, 14. Based on these allegations, the Complaint asserts a single count of maritime negligence against Defendant, alleging that Defendant breached its duty of care by failing "to provide a non-skid deck, keep that deck area clear of black grease and/or oil and to employ lifeguards or pool attendants to carry out frequent inspections so as to warn of slippery

areas and remove grease and oil." *Id.* ¶ 12; *see generally id.* Defendant filed its Answer and Affirmative Defenses on August 5, 2019. ECF No. [5].

The facts relevant to the instant Motion are as follows: On June 7, 2019—the same day that Plaintiff fell—another passenger on the Carnival *Paradise*, Christy Baker ("Ms. Baker"), fell in the same spot on the pool deck approximately an hour before Plaintiff's accident. ECF No. [81-3] at 7:15-20. Upon falling, Ms. Baker immediately went to the ship's medical center, which was closed at the time, and she was approached by Nurse Amanda Hulley ("Nurse Hulley"), who was on call. ECF No. [81-3] at 16:8-14; ECF No. [81-6] at 50. Ms. Baker reported pain in her wrist, and Nurse Hulley's medical report states that Ms. Baker's wrist exhibited "no obvious deformity" and "no swelling." ECF No. [81-6] at 50. Nurse Hulley applied an ACE bandage to Ms. Baker's wrist and asked that she return to the medical center at 3:00 p.m. so she could be seen by the doctor, but Ms. Baker never returned. *Id.* at 50-51. The medical report notes that Ms. Baker "stated she slipped and fell on lido deck," and characterizes Ms. Baker's injury as "non-urgent." *Id.* Ms. Baker testified that she never reported the incident to security and was never questioned by any security personnel regarding the location of her fall or the cause. ECF No. [81-3] at 10:2-6, 17:13-24. Indeed, no official incident report was ever created for Ms. Baker's accident. *See* ECF No. [100-3] ¶ 9 ("Declaration").

Nurse Hulley and Assistant Chief Security Officer Riemar Castano Seruelas ("ACSO Seruelas") both testified that the protocols for reporting injuries to security require that the doctor, after examining an injured passenger, should call security to create an incident report and investigate the accident if the injury requires more than first aid. ECF No. [81-6] at 27:10-18, 40:9-41:2; ECF No. [81-7] at 93:14-94:17; *see also* ECF No. [100-3] ¶ 5. ACSO Seruelas also testified that, in conducting an investigation relating to a passenger injury, security would pull the CCTV footage at the time of the incident to see how the incident occurred and would preserve the portion

of the CCTV footage depicting the accident. ECF No. [81-7] at 30:20-31:25, 83:6-8, 85:19-86:3; *see also* ECF No. [100-3] ¶¶ 5, 9.

> Moreover, Defendant's Litigation Representative submitted a Declaration, stating that:
>
> because Ms. Baker's incident, which involved a minor wrist injury, did not require treatment beyond first aid, the investigation protocol was not triggered. To wit, Ms. Baker did not seek medical attention from the onboard doctor after receiving treatment amounting to first aid by Nurse Hulley. Ms. Baker did not return to the Medical Center to receive treatment from the onboard doctor nor did Ms. Baker inform any Carnival personnel that she sustained a severe injury. Carnival's shipboard investigators did not create an Accident Report, take witness statements, have Ms. Baker prepare a passenger injury statement, take photographs in order to assist legal counsel, nor did they preserve CCTV footage of Ms. Baker's incident because it had no reason to anticipate litigation would ensue from Ms. Baker's incident.

ECF No. [100-3] ¶ 9. The Declaration also explains that CCTV footage is automatically overwritten after fourteen days, unless specifically preserved in anticipation of litigation. *Id.* ¶¶ 10-11. As Defendant did not anticipate litigation arising from Ms. Baker's incident, the relevant CCTV footage was not preserved and thus was overwritten after fourteen days and no longer exists. *Id.* ¶ 11. On December 16, 2019, after receiving the CCTV footage of her own accident, Plaintiff served a Request to Produce Ms. Baker's CCTV video on Defendant. As explained above, that footage was no longer in existence.

Plaintiff now argues that Defendant spoliated critical evidence—namely, the CCTV footage of Ms. Baker's fall—and requests that an adverse inference be drawn against Defendant that the CCTV video would have established that Defendant was on notice of the hazardous spot on the pool deck because Ms. Baker's fall occurred in the same location one hour prior to Plaintiff's fall. Defendant opposes Plaintiff's Motion, arguing that there is no record evidence that it knew of the location or cause of Ms. Baker's fall, and because Defendant's accident reporting protocol was not triggered by Ms. Baker's incident, it had no notice of the need to preserve pertinent CCTV footage.

## II. LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (citation omitted). In certain circumstances, a party's "spoliation of critical evidence may warrant the imposition of sanctions." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005). "Sanctions for spoliation may include '(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator.'" *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (quoting *Flury*, 427 F.3d at 945); *see also Morrison v. Veale*, No. 3:14-cv-1020-TFM, 2017 WL 372980, at *5 (M.D. Ala. Jan. 25, 2017).

Because these sanctions are evidentiary matters, federal law governs the imposition of spoliation sanctions. *See Flury*, 427 F.3d at 944 (concluding that "federal law governs the imposition of sanctions for failure to preserve evidence"). Nonetheless, "the Court may look to state law for guidance to the extent that it is consistent with federal law." *Wilson v. Wal-Mart Stores, Inc.,* No. 5:07-cv-394-Oc-10GRJ, 2008 WL 4642596, at *2 (M.D. Fla. Oct. 17, 2008) (footnote omitted). Moreover, "[a] district court's power to sanction a party for spoliation of evidence derives from two sources: (1) the Federal Rules of Civil Procedure and (2) the court's inherent power[1] to control the judicial process and litigation." *Sosa v. Carnival Corp.*, No. 18-

---

[1] Federal courts generally

> derive their power to sanction any attorney, law firm, or party from three primary sources: Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the inherent power of the court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991). Each source sanctions different conduct and wrongdoers.
>     "A court's inherent power is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (internal citation omitted). A court may exercise this inherent power to sanction both an attorney or party who has acted with subjective bad

20957-CIV, 2018 WL 6335178, at *8 (S.D. Fla. Dec. 4, 2018) (citing Fed. R. Civ. P. 37(e)), *reconsideration denied*, No. 18-20957-CIV, 2019 WL 330865 (S.D. Fla. Jan. 25, 2019); *see also Flury*, 427 F.3d at 944 (explaining that district courts have inherent power to impose sanctions for discovery abuses to "prevent unfair prejudice to litigants and to [ensure] the integrity of the discovery process").

Federal Rule of Civil Procedure 37(e) "address[es] the spoliation of electronically stored information [(ESI)]," *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018), stating:

> **Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

The Advisory Committee notes on the 2015 amendment make it clear that Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures would be used" for the spoliation of evidence. Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment. "Therefore, it would be inappropriate to analyze the spoliation sanctions motion

---

faith. *Id.* "However, in the absence of direct evidence of subjective bad faith, this standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith." *Id.* at 1224-25.

*GBS Inv. Grp. v. United Specialty Ins. Co.*, No. 18-23310-CIV, 2020 WL 5356562, at *6-7 (S.D. Fla. Aug. 11, 2020), *report and recommendation adopted*, No. 18-23310-CIV, 2020 WL 5355966 (S.D. Fla. Sept. 6, 2020).

concerning CCTV and VDR using the common law inherent power authority . . . . Instead, Rule 37(e) controls." *Incardone v. Royal Caribbean Cruises, Ltd.*, No. 16-20924-CIV, 2019 WL 3779194, at *18 (S.D. Fla. Aug. 12, 2019). Moreover, the moving party on a motion for spoliation sanctions carries the burden of proof. *Walter v. Carnival Corp.,* No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010) (citing *Floeter v. City of Orlando*, 6:05-cv-400-Orl-22KRS, 2007 WL 486633, at *5 (M.D. Fla. Feb. 9, 2007)).

While Rule 37(e) limits courts' discretion to impose sanctions for ESI spoliations, it "authorizes courts to impose sanctions for destruction of ESI where four conditions are met." *In Re: Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-md-2734, 2018 WL 4856767, at *2 (N.D. Fla. Oct. 5, 2018).

> [A]s a preliminary matter, the rule applies only to ESI, so the first inquiry is whether ESI is what was lost. Assuming that the alleged spoliation does indeed involve ESI, then three additional questions must be resolved. First, should the spoliated ESI have been preserved in the anticipation or conduct of the litigation? Second, is the loss of the ESI due to the party's failure to take reasonable steps to preserve the ESI? Third, can the ESI be restored or replaced through additional discovery? Where the "[a]nswer to any of [the three] questions . . . is 'no,' . . . a motion for spoliation sanctions or curative measures must be denied." *Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, No. 14-cv-62216, 2016 WL 1105297, at *4-5 (S.D. Fla. Mar. 22, 2016).

*Hoover v. NCL (Bah.) Ltd.*, No. 19-22906-CIV, 2020 WL 4505634, at *8 (S.D. Fla. Aug. 5, 2020) (footnote omitted).[2]

---

[2] Notably, other district courts within the Southern District of Florida have synthesized the following key points when addressing spoliation sanctions under Rule 37(e):

    1. The rule applies only to ESI and only when ESI is lost.
    2. "Perfection in preserving all relevant electronically stored information is often impossible."
    3. Similarly, the rule "recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection."
    4. The rule is "inapplicable when the loss of information occurs despite the party's reasonable steps to preserve."
    5. "[I]nformation the party has preserved may be destroyed by events outside the party's control – the computer room may be flooded, a 'cloud' service may fail, a malign software attack may disrupt a storage system, and so on."

Ultimately, Rule 37(e) sets forth two categories of relief. First, "if a court finds prejudice to another party from the loss of ESI that 'should have been preserved in the anticipation or conduct of litigation,' then it may 'order measures no greater than necessary to cure the prejudice.'" *Nguyen v. Costco Wholesale Corp.*, No. 19-cv-80393, 2020 WL 413898, at *2 (S.D. Fla. Jan. 27, 2020) (quoting Fed. R. Civ. P. 37(e)(1)). Alternatively, "if the Court finds that the party that destroyed the ESI 'acted with the intent to deprive another party of the information's use in the litigation,'" then the court can impose the harsher sanctions, based upon that bad faith spoliation, as set forth in subsection (2). *Id.* (quoting Fed. R. Civ. P. 37(e)(2)). At bottom, however, both of the categories of relief under Rule 37(e) "require that the preliminary four factors be established," *Hoover*, 2020 WL 4505634, at *8, and depend on "a finding that destruction of the evidence resulted in prejudice

---

6. If ESI information is lost because a party failed to take reasonable steps to preserve it, then "the initial focus should be on whether the lost information can be restored or replaced through additional discovery." If the information "is restored or replaced, no further measures should be taken."
7. A court may resort to (e)(1) measures "only 'upon finding prejudice to another party from loss of the information.'"
8. The rule "does not place a burden of proving or disproving prejudice on one party or the other."
9. The more-stringent measures (deemed "specified and very severe") found in (e)(2) rejects cases which "authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence."
10. "Negligent or even grossly negligent behavior" does not logically support the inference that lost evidence was "unfavorable to the party responsible for the loss or destruction of the evidence" because "information lost through negligence may have been favorable to either party, including the party that lost it."
11. Subdivision (e)(2) "does not include a requirement that the court find prejudice to the party deprived of the information" because the required intent finding also supports "an inference that the opposing party was prejudiced by the loss of information that would have favored its position."
12. Courts should use caution in using the (e)(2) measures. Finding the requisite intent does not require a court to adopt any of the (e)(2) measures. The "remedy should fit the wrong" and the "severe measures" should "not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss."

*Hoover*, 2020 WL 4505634, at *9 (quoting *Williford v. Carnival Corp.*, No. 17-cv-21992, 2019 WL 2269155, at *5-6 (S.D. Fla. May 28, 2019)); *see also* Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment.

to the opposing party," *ML Healthcare Servs., LLC*, 881 F.3d at 1309.

### III. DISCUSSION

Turning to the instant Motion, in order to impose spoliation sanctions on a party pursuant to Rule 37(e), the Court must ensure that the four requirements are met: "(1) the information sought constitutes ESI; (2) the ESI should have been preserved in anticipation of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2020 WL 5878814, at *3 (S.D. Fla. Oct. 2, 2020) (quoting *Title Cap. Mgmt., LLC v. Progress Residential, LLC*, No. 16-21882-CIV, 2017 WL 5953428, at *3 (S.D. Fla. Sept. 29, 2017)). As such, the Court will address each Rule 37(e) requirement independently.

#### A. The CCTV Footage is ESI

The Court first addresses whether the CCTV footage in this case constitutes ESI, thereby implicating Rule 37(e). *See Romero v. Regions Fin. Corp.*, No. 18-22126-CIV, 2019 WL 2866498, at *4 (S.D. Fla. July 3, 2019) ("Rule 37(e)—and not the Court's inherent powers to control its docket—provide the exclusive mechanism by which we must analyze spoliation allegations involving ESI." (citing *Living Color Enters., Inc.*, 2016 WL 1105297, at *4; *Wooden v. Barringer*, No. 3:16-cv-446-MCR-GRJ, 2017 WL 5140518, at *3-4 (N.D. Fla. Nov. 6, 2017); *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017))). Although "the Federal Rules of Civil Procedure do not define ESI," the Advisory Committee's notes on Federal Rule of Civil Procedure 34 "broadly discuss[] ESI as covering all current types of computer-based information that are not in tangible form." *Sosa*, 2018 WL 6335178, at *10.

8

Importantly, the parties in this case appear to be in agreement that the CCTV footage is ESI that is governed by Rule 37(e).[3] The Court's independent review of the cases in this District likewise confirms that Rule 37(e) is the exclusive avenue available to address the instant arguments regarding the spoliation of Ms. Baker's CCTV video.[4] As such, the Court concludes that the first requirement is satisfied.

### B. Defendant's Duty to Preserve the ESI

Next, the Court turns to whether the CCTV footage is the type of ESI that Defendant should have preserved. Stated differently, this prong examines whether Defendant had a duty to preserve the CCTV video at issue in this case. *See Incardone*, 2019 WL 3779194, at *20.

A party's duty to preserve evidence only "arises once litigation is pending or reasonably foreseeable." *Graff*, 310 F. App'x at 201; *see also Jetport, Inc. v. Landmark Aviation Mia., LLC*, No. 16-cv-23303, 2017 WL 7732869, at *3 (S.D. Fla. July 24, 2017).

> "'The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). "This notice may come at hands of differing events, but most[] commonly, a party is deemed to have notice of pending litigation if the party has received a discovery request, a complaint has been filed, or any time

---

[3] Oddly, although Plaintiff moves for spoliation sanctions under Rule 37(e), *see* ECF No. [75] at 1, her Motion ultimately relies on the legal standard for imposing sanctions pursuant to the Court's inherent powers, *see id.* at 4, and her Reply does not contain any law that indicates any disagreement with Rule 37(e)'s applicability. As noted above, however, the application of Rule 37(e) forecloses imposing sanctions pursuant to the Court's inherent powers. *See* Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment. As such, the Court's analysis will follow the four requirements of Rule 37(e) presented above.

[4] *See ML Healthcare Servs., LLC*, 881 F.3d at 1307 (noting that Rule 37(e) was amended "to address the spoliation of electronically stored information like the [surveillance] video at issue here"); *Reed*, 2020 WL 5878814, at *5 ("The parties do not dispute that the CCTV footage constitutes ESI."); *Nguyen*, 2020 WL 413898, at *2 ("[C]laims for spoliation of electronically stored information ('ESI'), such as the [surveillance video here], are governed by amended Rule 37(e)."); *Incardone*, 2019 WL 3779194, at *20 ("There is no dispute over the fundamental classification that the CCTV and VDR are in fact ESI."); *Romero*, 2019 WL 2866498, at *4 ("Rule 37 provides the exclusive avenue to sanction a party based on spoliation allegations related to ESI, which would include the surveillance video at issue here"); *Sosa*, 2018 WL 6335178, at *15 (concluding that "the lost CCTV video footage is ESI governed by Rule 37 and that [the court's] inherent authority cannot be used" (emphasis omitted)); *Wooden*, 2017 WL 5140518, at *4 (concluding that the video surveillance recordings constitute ESI subject to Rule 37(e)).

> a party receives notification that litigation is likely to be commenced." *Oxford House, Inc. v. City of Topeka, Kansas*, 2007 WL 1246200, at *3 (D. Kan. Apr. 27, 2007). In other words, "[a] party has the requisite notice when it can reasonably anticipate impending litigation—that is, litigation that has 'more than a possibility' of occurring—to which the evidence would be relevant." *Garcia v. United States*, 2014 WL 12709430, at *1 (C.D. Cal. Sept. 3, 2014) (quoting *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 523-24 (N.D. Cal. 2009)). This means that "[a] general concern over litigation does not trigger a duty to preserve evidence," because there is "no duty to preserve relevant documents or evidence until a potential claim [is] identified or future litigation [is] probable." *Realnetworks, Inc.*, 264 F.R.D. at 526.

*Tesoriero v. Carnival Corp.*, No. 16-21769-CIV, 2017 WL 8895347, at *23 (S.D. Fla. Sept. 22, 2017), *report and recommendation adopted*, No. 16-cv-21769, 2018 WL 1894717 (S.D. Fla. Mar. 23, 2018), *aff'd but criticized*, 965 F.3d 1170 (11th Cir. 2020).

"Once a party reasonably anticipates litigation, it has an obligation to make a conscientious effort to preserve electronically stored information that would be relevant to the dispute." *U.S. ex rel. King v. DSE, Inc.*, No. 8:08-cv-2416-T-23EAJ, 2013 WL 610531, at *7 (M.D. Fla. Jan. 17, 2013), *report and recommendation adopted*, No. 8:08-cv-2416-T-23EAJ, 2013 WL 608541 (M.D. Fla. Jan. 15, 2014); *see also Nguyen*, 2020 WL 413898, at *2; *Long v. Celebrity Cruises, Inc.*, No. 12-22807-CIV, 2013 WL 12092088, at *5 (S.D. Fla. July 31, 2013). "In determining whether litigation is reasonably foreseeable, 'the standard is an objective one.'" *Title Cap. Mgmt., LLC*, 2017 WL 5953428, at *4 (quoting *Ala. Aircraft Indus., Inc.*, 319 F.R.D. at 742).

Ultimately, the relevant inquiry is whether the litigation was "pending or reasonably foreseeable" at the time of spoliation. *See Graff*, 310 F. App'x at 301. Further, "a party's preservation duties attach only to evidence within that party's possession, custody, or control." *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 430 (M.D. Fla. 2018); *see also Watson v. Edelen*, 76 F. Supp. 3d 1332, 1343 (N.D. Fla. 2015) ("For a spoliation sanction to apply, it is essential that . . . the party actually destroyed or was privy to the destruction of the evidence. Further, the party having control over the evidence must have an obligation to preserve it at the

10

time it was destroyed[.]"). "Rule 37(e) does not apply, therefore, when information or evidence is lost before a duty to preserve attaches." *Keim v. ADF Midatlantic, LLC*, No. 12-cv-80577, 2016 WL 7048835, at *4 (S.D. Fla. Dec. 5, 2016).

Plaintiff argues that Defendant had a duty to preserve the CCTV footage of Ms. Baker's fall and its failure to adequately maintain this footage is evidence of bad faith, warranting an adverse inference. In Response, Defendant contends that the facts of this case are distinguishable from those of an ordinary slip-and-fall case, and these unusual facts establish that it was not reasonably forseeable for Defendant to preserve the footage of Ms. Baker's fall for use in the instant litigation.

The Court would be remiss if it failed to differentiate between Defendant's general duty to preserve CCTV footage of Plaintiff's accident (and other evidence derived from its investigation into Plaintiff's injuries)—with which Defendant complied—and the narrower duty to preserve CCTV footage of *other* passengers' injuries (like the video of Ms. Baker's fall)—which is a more fact-sensitive inquiry. It is undisputed that Defendant did anticipate litigation of Plaintiff's claims in this case and it therefore took measures to preserve the evidence it collected on Plaintiff's fall, including the CCTV footage of her accident, medical records, photographs of the area where she fell, incident reports, etc. *See, e.g.*, ECF Nos. [79-5], [79-6], & [89]. Indeed, the CCTV video submitted in this case establishes that Defendant preserved footage of Plaintiff's incident, and ACSO Seruelas likewise testified that he preserved the video of Plaintiff's accident on the day it occurred and saved the portion of the CCTV footage immediately surrounding Plaintiff's fall. *See* ECF No. [81-7] at 30:9-31:25, 83:6-8, 85:19-86:3, 92:20-93:1. These immediate efforts clearly

show Defendant's attempts to comply with its duty to preserve relevant evidence in anticipation of this litigation, thus undercutting any allegation of bad faith spoliation.[5]

In addition, the Court is equally unpersuaded that Defendant had a duty to preserve the CCTV footage of Ms. Baker's fall based on the circumstances in this case. Notably, Plaintiff presents no probative evidence to establish Defendant's requisite bad-faith intent to deprive Plaintiff of the CCTV footage at issue. Nor does she offer any persuasive evidence to contradict Defendant's explanation for the unavailability of the CCTV video detailing that it did not anticipate litigation arising from Ms. Baker's fall because its accident investigation protocols were never activated. At most, Plaintiff's arguments suggest that Defendant's failure to preserve Ms. Baker's CCTV footage was due to its negligence. *See Watson*, 76 F. Supp. 3d at 1343 ("No unfavorable inference arises when the circumstances indicate that the evidence in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for, such as where the destruction was a matter of routine." (citations omitted)).

Specifically, Defendant offers clear and credible evidence to demonstrate that it was unaware of the relevance of Ms. Baker's CCTV footage to the anticipated litigation of Plaintiff's

---

[5] *See ML Healthcare Servs., LLC*, 881 F.3d at 1308 ("The district court did not abuse its discretion by concluding that Defendant's failure to retain more video did not constitute bad faith or demonstrate an intent to deprive Plaintiff of evidence necessary to her case. Defendant immediately saved the most relevant portion of the video—the hour during which Plaintiff's fall occurred, which covered the entire time Plaintiff was in the store—before any request for preservation or notice of litigation was provided."); *Incardone*, 2019 WL 3779194, at *22 ("RCCL had no duty to preserve the *entirety* of the ship's CCTV for the entire cruise. RCCL preserved representative CCTV footage of the waves, wind, and weather conditions impacting the ship. There was no reason for RCCL to preserve every second of footage from all 200 cameras on its ship."); *Mitchell v. Royal Caribbean Cruises, Ltd.*, No. 12-cv-22734, 2013 WL 12066018, at *1 (S.D. Fla. May 7, 2013) ("Defendant reviewed and preserved the CCTV footage that depicted the incident. That preserved piece of evidence is the most material for Plaintiff's claim as it bolsters her credibility as to the nature of the fall. It also shows the manner in which Plaintiff was trying to carefully walk down the gangway as it rained. In this respect, the record shows that Defendant acted in a manner that undercuts a claim of bad faith spoliation."); *cf. Hill v. Ross Dress for Less, Inc.*, No. 12-23368-CIV, 2013 WL 6190435, at *3 (S.D. Fla. Nov. 26, 2013) ("Unfortunately for Plaintiff, she has not shown that Defendant had a duty to preserve surveillance video that does not actually show the area where the incident occurred. Thus, Plaintiff is not entitled to an adverse inference.").

claims because (1) Ms. Baker's injury was minor and she was never examined by the doctor, who was responsible for reporting any accidents to security for an official investigation; (2) Defendant's accident investigation protocols were not otherwise activated by Ms. Baker's incident; and (3) without knowledge of the accident or corresponding official investigation as to the cause, Defendant was unaware of the CCTV footage of Ms. Baker's fall or of its relevance to Plaintiff's claims. Plaintiff's arguments to the contrary are largely based on her disagreement with Defendant's underlying protocols for officially reporting accidents and the manner in which these protocols are carried out.

Importantly, "Litigants do not have a duty to preserve any and all evidence, but only that which is potentially relevant." *Incardone*, 2019 WL 3779194, at *22. Moreover, the Advisory Committee's notes on Rule 37(e)'s 2015 amendment specifically caution against broad assumptions regarding a litigant's duty to preserve evidence and the scope of relevant information arising from that duty:

> In applying the rule, a court may need to decide whether and when a duty to preserve arose. Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant. A variety of events may alert a party to the prospect of litigation. Often these events provide only limited information about that prospective litigation, however, so that the scope of information that should be preserved may remain uncertain. It is important not to be blinded to this reality by hindsight arising from familiarity with an action as it is actually filed.

Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment. Indeed, "even when litigation is reasonably foreseeable, '[a] corporation under a duty to preserve is not required to keep every shred of paper, every e-mail or electronic document, and every backup tape . . . .'" *Ala. Aircraft Indus., Inc.*, 319 F.R.D. at 740-41 (citations omitted).

Absent any indication that Defendant was aware that the video of Ms. Baker's fall would be relevant to Plaintiff's injuries, the Court concludes that Defendant did not have a duty to preserve this CCTV footage in anticipation of Plaintiff's litigation. Plaintiff's Motion is therefore

13

due to be denied on this basis alone. *See Hoover*, 2020 WL 4505634, at *12 (concluding that the defendant had no duty to preserve ESI when it was unaware of plaintiff's claim at the time the ESI was destroyed because there was no anticipation of litigation); *Incardone*, 2019 WL 3779194, at *22 ("[T]he mere fact that a party had the ability to preserve more ESI does not necessarily mean that a decision to preserve less is evidence of a breach of the duty to preserve."); *Wilson*, 2008 WL 4642596, at *2 (noting "[a] party is not guilty of spoliation when it destroys documents as part of its regular business practices and is unaware of their potential relevance to litigation.").

### C. Defendant's Reasonable Efforts to Preserve the ESI

"Even assuming Defendant did have a duty to preserve the allegedly spoliated video . . . , sanctions would still not be warranted unless the allegedly spoliated ESI was lost because Defendant failed to take reasonable steps to preserve it." *Nguyen*, 2020 WL 413898, at *3.

> Due to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant electronically stored information is often impossible. As under the current rule, the routine, good-faith operation of an electronic information system would be a relevant factor for the court to consider in evaluating whether a party failed to take reasonable steps to preserve lost information, although the prospect of litigation may call for reasonable steps to preserve information by intervening in that routine operation. *This rule recognizes that "reasonable steps" to preserve suffice; it does not call for perfection*.

Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (emphasis added).

In this case, as detailed above, Defendant did take reasonable steps to preserve the relevant ESI surrounding Plaintiff's injury, including, for example, immediately preserving the CCTV footage of her fall, preparing an incident report, taking Plaintiff's statement, and photographing the area. Defendant's failure to preserve all relevant ESI is not fatal where it has undertaken reasonable steps and adequately preserved the most pertinent CCTV footage—i.e., that of Plaintiff's incident. *See Reed*, 2020 WL 5878814, at *9 ("[D]efendant preserved a reasonable amount of the CCTV footage given the plaintiff and other witnesses' descriptions of the incident,

including the plaintiff's oral statement that John Doe was intoxicated. The portion of the CCTV footage that was not preserved was taped over during the normal course of operation."); *cf. Williford*, 2019 WL 2269155, at *11-12 (concluding that defendant failed to take reasonable steps where it offered no explanation for the failure to preserve evidence); *Sosa*, 2018 WL 6335178, at *19 (concluding that defendant failed to take reasonable steps to preserve spoliated evidence where it only offered speculative possibilities to explain the missing CCTV video). Thus, in light of the specific facts and circumstances presented, the Court finds that the loss of Ms. Baker's CCTV footage was not due to Defendant's failure to take reasonable steps to preserve the video, but rather was due to "the routine, good-faith operation of an electronic information system" that automatically taped over prior footage.

### D. The ESI Cannot be Restored or Replaced

Lastly, the Court turns to the requirement of Rule 37(e) that the spoliated evidence "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e); *see AXIS Ins. Co. v. Terry*, No. 2:16-cv-01021-JHE, 2018 WL 9943825, at *7 (N.D. Ala. Apr. 23, 2018). The parties seem to agree that the missing portions of the CCTV footage cannot be restored or replaced because the cameras used are set to record footage for fourteen days, at which point they are automatically overwritten. ECF No. [100-3] ¶ 11. Because Ms. Baker's CCTV footage was not requested in anticipation of litigation, the video of her fall has now been taped over and no longer exists. *Id.* ¶¶ 10-11. Based on these representations, the Court finds that the fourth consideration under Rule 37(e) is satisfied.

However, in light of the Court's conclusion that two of the four requirements of imposing spoliation sanctions are not met, the instant Motion must be denied. *See Reed*, 2020 WL 5878814, at *9; *Living Color Enters., Inc.*, 2016 WL 1105297, at *5 ("If the answer to any of questions 1-3

is 'no', then the Court need proceed no further under Rule 37(e), and a motion for spoliation sanctions or curative measures must be denied.").

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, **ECF No. [75]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 18, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record