UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-22932-BLOOM/Louis

MINDY EASTERWOOD,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**OMNIBUS ORDER ON *DAUBERT* MOTIONS**

**THIS CAUSE** is before the Court upon Plaintiff Mindy Easterwood's ("Plaintiff") Motion to Strike Carnival Corporation Expert Witness Zdenek Hejzlar, Ph.D. Testimony Pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), ECF No. [78] ("Plaintiff's Motion"), and Defendant Carnival Corporation's ("Defendant") Motion *in Limine* Under *Daubert*, ECF No. [80] ("Defendant's Motion"), (collectively, the "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Plaintiff's Motion is denied, and Defendant's Motion is granted.

    **I. BACKGROUND**

On July 16, 2019, Plaintiff initiated the instant action against Defendant for personal injuries she sustained while onboard Defendant's cruise ship. ECF No. [1] ("Complaint"). The Complaint alleges that on June 7, 2019, while walking on the pool deck of the Carnival *Paradise*, Plaintiff stepped on what appeared to be mechanical grease, slipped and fell, resulting in serious injuries. *Id.* ¶¶ 9-11, 14. Based on these allegations, the Complaint asserts a single count of

maritime negligence against Defendant, alleging that Defendant breached its duty of care by failing "to provide a non-skid deck, keep that deck area clear of black grease and/or oil and to employ lifeguards or pool attendants to carry out frequent inspections so as to warn of slippery areas, and remove grease and oil." *Id.* ¶ 12; *see generally id.*

Plaintiff now seeks to strike the opinions and testimony of Defendant's expert witness, Zdenek Hejzlar, Ph.D. ("Dr. Hejzlar"), on the "coefficient of friction testing performed under dissimilar conditions as the day and time of [Plaintiff's] fall," on "the mental impressions of [Plaintiff] or her mother as they walked toward the pool," and to strike the bolstered expert opinions "where the common sense of the trier of fact requires no expert." ECF No. [78] at 14. Defendant moves to preclude the testimony and opinions of Plaintiff's expert witness, Randall Jaques ("Mr. Jaques"), because he is not qualified to render his opinions, he did not employ any proper methodology, and his opinions are not helpful to the fact finder. ECF No. [80] at 1.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to

determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

An expert in this Circuit may be qualified "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. June 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[1]

When determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation omitted) (quotation marks omitted). To make this

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

determination, the district court examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* at 1262 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Thus, these factors are non-exhaustive, and the Eleventh Circuit has emphasized that alternative questions may be more probative in the context of determining reliability. *See id.* Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *Id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must

"ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

### III. DISCUSSION

Plaintiff and Defendant each seek to exclude the opinions of the opposing party's expert witness. As an initial matter, however, the Court notes that this case is set to be tried by bench trial. *See* ECF Nos. [43] & [50].

> In a bench trial, "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for h[er]self." *U.S. v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005). *See also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Ass Armor, LLC v. Under Armour, Inc.*, No. 15-cv-20853-CIV, 2016 WL 7156092, at *4 (S.D. Fla. Dec. 8, 2016) ("As this is a bench trial without a jury, however, the need for an advance ruling to exclude [expert] testimony is superfluous and unnecessary."). That is because the Court as a fact finder is "presumably competent to disregard what [s]he thinks [s]he should not have heard, or to discount it for

5

practical and sensible reasons." *Ass Armor*, 2016 WL 7156092, at *4 (internal quotation marks and citations omitted). At trial, the Court as fact finder is free to later decide to disregard testimony in whole or in part and/or to decide how much weight to give it. *See Brown*, 415 F.3d at 1270; [*N.W.B. Imps. & Exps. Inc. v. Eiras*, No. 3:03-cv-1071-J-32-MMH, 2005 WL 5960920, at *1 (M.D. Fla. Mar. 22, 2005)]; *Ass Armor*, 2016 WL 7156092, at *4. As another court in this District has explained:

> [T]he danger involved with such expert testimony, namely that the jury will be unduly influenced, is not implicated in a bench trial. The Court is confident that it can discern testimony that seeks to make legal conclusions from testimony that provides the Court with background, context and industry knowledge that are traditionally supplied by experts. . . .

*Apple Glen Inv'rs, L.P. v. Express Scripts, Inc.*, No. 8:14-cv-1527-T-33EAJ, 2015 WL 3721100, at *4 (M.D. Fla. June 15, 2015) (internal quotation marks and citations omitted)).

*GLF Constr. Corp. v. Fedcon Joint Venture*, No. 8:17-cv-1932-T-36AAS, 2019 WL 7423552, at *3 (M.D. Fla. Oct. 15, 2019).

Moreover, "district courts conducting bench trials have substantial flexibility in admitting proffered expert testimony at the front end, and then deciding for themselves during the course of trial whether the evidence meets the requirements" of Rule 702. *Brown*, 415 F.3d at 1243-44 (quoting *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 635 (6th Cir. 2000) (Gilman, J., dissenting)). "Alternatively, in a bench trial, it has been an acceptable method 'to admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled.'" *Nat'l Union Fire Ins. Co. of Pittsburgh PA v. SPX Flow US, LLC*, No. 18-cv-80332, 2019 WL 1227987, at *3 (S.D. Fla. Mar. 14, 2019) (quoting *SmithKline Beecham Corp. v. Apotex*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003)).[2] "The Court can separate and disregard any [improper or speculative]

---

[2] *See also Singh v. Caribbean Airlines Ltd.*, No. 13-20639, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014) ("When ruling on motions *in limine*, a court is forced to determine the admissibility of evidence without the benefit of the context of trial. *See LaConner Assocs. Ltd. Liab. Co. v. Island Tug and Barge Co.*, No. C07-175RSL, 2008 WL 2077948, at *2 (W.D. Wash. May 15, 2008); *Rettiger v. IBP, Inc.*, No. 96-4015-SAC, 1999 WL 318153, at *1 (D. Kan. Jan. 6, 1999) (recognizing that a court is almost always

conclusions . . . from testimony which provides context and evaluates the evidence in light of specialized expertise." *GLF Constr. Corp.*, 2019 WL 7423552, at *4 (citing *Apple Glen Inv'rs, L.P.*, 2015 WL 3721100, at *4). "At trial, the Court as fact finder is free to later decide to disregard testimony in whole or in part and/or to decide how much weight to give it." *Id.* at *3.

Thus, "[w]here a trial judge conducts a bench trial, the judge need not conduct a *Daubert* (or Rule 702) analysis before presentation of the evidence, even though [s]he must determine admissibility at some point." *Travelers Prop. Cas. Co. of Am. v. Barkley*, No. 16-61768-CIV, 2017 WL 4867012, at *1 (S.D. Fla. June 2, 2017) (quoting *Kan. City S. Ry. Co. v. Sny Island Levee Drainage Dist.*, 831 F.3d 892, 900 (7th Cir. 2016)). "In fact, courts are advised to deny motions *in limine* in non-jury cases." *Singh*, 2014 WL 4101544, at *1 (citing 9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2411 (3d ed. 2008)). "Notwithstanding, courts may still go through the individual analyses of the experts or motions, and have granted these motions to strike prior to the bench trial." *Broberg v. Carnival Corp.*, No. 17-cv-21537, 2018 WL 4778457, at *1 (S.D. Fla. June 11, 2018) (citing *Exim Brickell LLC*, 2011 WL 13131317, at *4; *Goldberg v. Paris Hilton Ent., Inc.*, No. 08-22261-CIV, 2009 WL 1393416, at *4 (S.D. Fla. May 18, 2009)), *report and recommendation adopted*, No. 17-21537-CIV, 2018 WL 4776386 (S.D. Fla. July 3, 2018). With these principles in mind, the Court addresses each of the Motions below.

### A. Plaintiff's Motion

Plaintiff's Motion seeks to strike Dr. Hejzlar's testimony, arguing that his coefficient of friction testing lacked any reliable scientific testing or methodology, his conclusion on the mental impressions of Plaintiff or her mother lacks any methodology, and that he attempts to bolster his

---

better situated during the actual trial to assess the value and utility of evidence). The more prudent course in a bench trial, therefore, is to resolve all evidentiary doubts in favor of admissibility. *See Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 Civ 3796(PKL), 2004 WL 1970144, at *5 (S.D.N.Y. Sept. 3, 2004).").

expert opinions by relying on treatises and scientific articles that are inadmissible hearsay. Nevertheless, Plaintiff does not appear to raise any challenge to Dr. Hejzlar's qualifications. In response, Defendant argues that Dr. Hejzlar is qualified to render his opinions in this case and that his opinions are based on reliable scientific methodology and relevant industry standards that are complex and helpful to the trier of fact. Moreover, Defendant states that Dr. Hejzlar does not intend to testify on any matters regarding the mental impressions of Plaintiff or her mother, and his reliance on treatises and relevant scientific articles are not intended to bolster his opinions, but rather to demonstrate that he relied on peer-reviewed, published material in forming his opinions. Each argument is addressed separately below.

### 1. Coefficient of Friction Testing Methodology

Plaintiff first argues that Dr. Hejzlar should be precluded from offering testimony on the coefficient of friction testing that he performed on the Carnival *Paradise* teakwood deck less than a month after Plaintiff's incident because his testing was performed under dissimilar conditions to those present at the time of the fall and is therefore unreliable. According to Plaintiff, this lack of contemporaneous testing demonstrates that Dr. Hejzlar's opinions are formed by using "junk science coefficient of friction test[ing]," based on a "fictitious set of facts." ECF No. [78] at 2, 3, 11. Defendant, on the other hand, contends that coefficient of friction testing is generally recognized by the Eleventh Circuit as being reliable and helpful to a jury in slip-and-fall cases, and it is often presented by way of expert witness testimony. Further, Defendant details the specific, reliable scientific methodology that Dr. Hejzlar used in forming his opinions in this case.

The Eleventh Circuit has made it clear that "[a] qualified expert who uses reliable testing methodology may testify as to the safety of a defendant's choice of flooring, determined by the

8

surface's coefficient of friction." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citations omitted). Furthermore,

> [i]n slip and fall cases involving an allegedly dangerous or defective surface, the question of liability sometimes turns on (or is at least informed by) the surface's coefficient of friction (COF), which is, in layman's terms, "the degree of slip resistance." *Mihailovich v. Laatsch*, 359 F.3d 892, 896, 921 n.2 (7th Cir. 2004). *See also Shorter Oxford English Dictionary* 1035 (5th ed. 2002) (defining COF as "the ratio between the force necessary to move one surface horizontally over another and the normal force each surface exerts on the other"). "The higher the [COF], the less slippery the [surface] w[ill] be." *Mihailovich*, 359 F.3d at 921 n.2.
>
> Evidence concerning a surface's COF is generally presented through the testimony of an expert witness, who opines on the appropriate COF industry standard and on whether the surface in question meets that standard. *See, e.g.*, *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193-94 (11th Cir. 2011) (ceramic tile floor in cruise ship); *Great Am. Ins. Co. v. Cutrer*, 298 F.2d 79, 80-81 (5th Cir. 1962) (sidewalk); *McNeilly v. Greenbrier Hotel Corp.*, 16 F. Supp. 3d 733, 735-36 (S.D. W.Va. 2014) (hotel bathtub); *Frazza v. United States*, 529 F. Supp. 2d 61, 69-70 (D.D.C. 2008) (vinyl tile floor in White House).

*Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1278-79 (11th Cir. 2015). Thus, based on the Eleventh Circuit's clear and well-established recognition of coefficient of friction testing, the Court does not find any merit in Plaintiff's designation of such testing as "junk science."

Likewise, upon review of Dr. Hejzlar's report, the Court finds a lengthy and detailed explanation of the methodology employed in forming the opinions presented. First, Dr. Hejzlar addresses the various industry standards on the proper coefficient of frequency, and explains the functions and/or flaws of each standard. ECF No. [104-2] at 16-18. He then explains the basis for the industry standard selected in this case, explaining that "[t]hese standards do not provide a single threshold value for COF. They provide COF ranges and corresponding risk ranges that are based on risk of falling research. The standards also distinguish between static and dynamic COF and provide a method how to test for each." *Id.* at 17. After explaining the industry standards he relies on, Dr. Hejzlar sets forth the various industry risk ranges, and their respective degrees of slip resistance, and then conducts an assessment on how the COF results he obtained in testing the

9

teakwood on the *Paradise* pool deck meet the relevant industry requirements. *Id.* at 20-22. Likewise, his deposition testimony describes the methodology Dr. Hejzlar used in his testing. *See, e.g.*, ECF No. [103-1] at 54:15-55:12, 82:22-86:5, 90:11-92:17. The Court finds that this methodology is sufficient for present purposes, especially given the relaxed *Daubert* inquiry required for bench trials, "because the Court as a fact finder is 'presumably competent to disregard what [s]he thinks [s]he should not have heard, or to discount it for practical and sensible reasons.'" *GLF Constr. Corp.*, 2019 WL 7423552, at *3 (quoting *Ass Armor*, 2016 WL 7156092, at *4).

Notably, Plaintiff does not dispute any of the procedures or standards Dr. Hejzlar employed in forming his opinions, but rather argues that "measurement of coefficient of friction is illogical as a matter of common sense when conditions at the time of the fall are not replicated." ECF No. [78] at 7-8. However, the Eleventh Circuit has explicitly held that a delay in testing the area where an accident occurred does not render the coefficient of friction testing unreliable where the site has not changed in any material way since the incident. *Sorrels*, 796 F.3d at 1285. Instead, "Any weaknesses in the factual underpinnings of [the expert's] opinion go to the weight and credibility of his testimony, not to its admissibility." *Id.* (citation omitted). Thus, Dr. Hejzlar's report clearly satisfies the minimum requirements of reliability. To the extent Plaintiff seeks to challenge any suspected weaknesses in Dr. Hejzlar's testing, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341. As such, Plaintiff's Motion is denied on this issue.

### 2. Mental Impressions

With regard to Plaintiff's request to exclude any testimony regarding the mental impressions of Plaintiff or her mother when walking around the pool deck, as mentioned above,

Dr. Hejzlar stated during his deposition that he does not intend to offer any such testimony. *See, e.g.*, ECF No. [103-1] at 106:23-107:1; *see also* ECF No. [101-2] ¶ 32.[3] Therefore, Plaintiff's Motion is denied as moot on this issue. Plaintiff may, where appropriate, raise the proper objections to Dr. Hejzlar's testimony during trial. *See ConSeal Int'l Inc. v. Neogen Corp.*, No. 19-cv-61242, 2020 WL 5797631, at *4 (S.D. Fla. Sept. 29, 2020); *Adams v. Paradise Cruise Line Operator Ltd.*, No. 19-cv-6114, 2020 WL 3489366, at *4 (S.D. Fla. June 26, 2020).

### 3. Bolstering Opinions with Treatises

Finally, citing to Florida law, Plaintiff takes issue with Dr. Hejzlar's reliance on treatises and scientific articles setting forth industry standards, arguing that these references improperly attempt to bolster his opinions. The Court is unpersuaded by this argument because the Federal Rules of Evidence explicitly allow an expert witness to rely on relevant treatises under certain circumstances. *See, e.g.*, Fed. R. Evid. 703 (allowing experts to disclose information they relied on to the jury even if such information would otherwise be inadmissible); Fed. R. Evid. 803(18) (excluding statements in a treatise, periodical, or pamphlet from hearsay if "relied on by the expert on direct examination"); *Dewit v. UPS Ground Freight, Inc.*, No. 1:16-cv-36-MW/CAS, 2017 WL 4863279, at *4 (N.D. Fla. Aug. 22, 2017).

Additionally, Plaintiff argues that Dr. Hejzlar "relies upon statistics from others who may be inadmissible bolstering sources but who did not examine the teak floor at the time of the fall,"

---

[3] It is worth noting that, although Plaintiff challenges Dr. Hejzlar's opinions on her mental impressions as lacking any methodology (i.e., under the *Daubert* prong of "reliability"), she cites to a case excluding expert testimony for being unhelpful to the trier of fact. *See* ECF No. [78] at 12. Moreover, Plaintiff's reply, which is entirely devoid of any citation to supporting case law save for one case, hardly clarifies the basis of her challenge. *See generally* ECF No. [112]. Nevertheless, this puzzling inconsistency need not be resolved at this juncture, given Defendant's representation that Dr. Hejzlar does not intend to testify as to any mental impressions. *See Ward v. Carnival Corp.*, No. 17-cv-24628, 2019 WL 1228063, at *14 (S.D. Fla. Mar. 14, 2019) (noting that arguments that "are presented in a haphazard, 'shotgun-style' format [] are unavailing. Proffering these arguments in such a way makes it difficult to determine which arguments apply to each of [the expert's] opinions, and it is not our duty to attempt to sort out what is what.").

and points to the references in the report to the American Society of Testing and Materials International (ATSM) standards. ECF No. [78] at 12, 13. However, a comprehensive review of the report demonstrates that these standards are widely recognized in Dr. Hejzlar's industry in determining whether the slip resistance characteristics of particular flooring satisfy required benchmarks. In this case, Dr. Hejzlar compared the applicable industry standards to the coefficient of friction of the *Paradise* teakwood deck. He concluded that the deck exhibited a high slip resistance potential, thus demonstrating a low probability of slipping. The Eleventh Circuit in *Sorrels* permitted an expert's reliance on ATSM standards for his opinion on industry COF standards. *Sorrels*, 796 F.3d at 1282-83.[4] Plaintiff presents no basis for why the same result should not follow here. As such, Plaintiff's Motion is denied as to this issue.

### B. Defendant's Motion

Defendant seeks to preclude Mr. Jaques from offering expert testimony on the opinions in his report, ECF No. [80-1]. Defendant contends that Mr. Jaques is not qualified to offer any of the opinions he intends to provide, his opinions are unreliable because they lack any proper methodology, and his opinions are unhelpful legal conclusions on the ultimate issues to be decided in this case and do not provide any insight beyond that of a lay person. Moreover, Defendant cites to numerous cases in the Southern District of Florida that have precluded Mr. Jaques' expert testimony in whole or in part for similar reasons as those presented in this case. Plaintiff's response, which is devoid of any citation to relevant or supporting case law, opposes Defendant's Motion,

---

[4] "Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence." *Sorrels*, 796 F.3d at 1282 (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180 (5th Cir. 1975)). "Where an expert is qualified and uses reliable methods, the expert may testify about relevant standards." *Fylling v. Royal Caribbean Cruises, Ltd.*, No. 18-cv-21953, 2019 WL 8760909, at *4 (S.D. Fla. June 13, 2019); *see also Rosenfeld*, 654 F.3d at 1193 ("A qualified expert who uses reliable testing methodology may testify as to the safety of a defendant's choice of flooring, determined by the surface's coefficient of friction [industry standard].").

relying primarily on Mr. Jaques' experience to establish that he satisfies the requirements of *Daubert*.[5]

Mr. Jaques was asked to provide expert opinions as to why Plaintiff fell on June 7, 2019, based on his understanding of cruise ship pool decks. ECF No. [80-1] at 1. In formulating his opinions, Mr. Jaques relied on interviews of Plaintiff and Christy Baker, his review of all discovery documents, pleadings, depositions, and photographs, Dr. Hejzlar's expert report, and the CCTV footage of Plaintiff's fall. *Id.* at 1, 4. As such, Mr. Jaques' report sets forth five expert opinions:

> **Expert Opinion 1.**
> Carnival Corporation has a reasonable duty to provide safety and care for its passengers. When it has not done so, Carnival is at fault for allowing for a hazardous situation unforeseen to its passengers to exist. Further Carnival had actual notice of the condition, noting which makes Carnival liable for not acting reasonable under the circumstances.
>
> **Expert Opinion 2.**
> Carnival Corporation is at fault for assuming passengers such as Mrs. Easterwood are aware of the fact they are walking into a dangerous, hazardous situations when walking along the pool deck toward the pool and adjacent shower. Had there been at least one yellow cone in the place adjacent to both sides of the raised deck then Mrs. Easterwood could have been warned of a potential hazard. The Plaintiff stated there were no signs near where she fell that can be seen. As stated Mrs. Easterwood was looking forward. By not warning of a hazard, Carnival is at fault.
>
> **Expert Opinion 3.**
> Carnival is at fault and was on notice of previous slip and fall accidents in this exact area. Exhibit 4 is a factual attempt by the defendant to prevent such slip and falls for the safety of its passengers. It is inconceivable that Carnival failed to address the safety of the area with all this prior knowledge and the known fact this area is typically unsafe and has a lab-tested oil based or cellulose residue problem which leeches off the weathered teakwood. The problem was not addressed by Carnival when it should have been.
>
> **Expert Opinion 4.**
> Ms. Cristy Baker testified in deposition (pages 7, 17, and 19) that she was escorted to the ship's infirmary. She was seen by the infirmary nurse later identified to have been Amanda Hulley, RN. This mandated a call from the infirmary to crew on the

---

[5] This Court previously limited Mr. Jaques' expert opinions to the liability theories alleged in Plaintiff's Complaint. *See* ECF No. [60].

> Lido deck to check the shower area, and to place a non skid mat or cautionary signs warning of a dangerous or slippery area.
>
> **Expert Opinion 5.**
> The teakwood flooring near the Lido pool shower often becomes slippery from suntan oil and lotion and cellulose leeching from the porous teakwood. When this has not been sanded or caulked in some time, the frequency of slipperiness increases as well as the amount of material which leeches off. This is a known hazard particularly in shower areas. When coefficient of friction testing is done in port in the morning, when the deck has been cleaned the previous night, this does not replicate the condition on a sunny last day of the cruise at sea when the shower and pool is in constant use by passengers.

*Id.* at 9-10 (all errors were in original). Moreover, at his deposition, Mr. Jaques withdrew certain portions of these opinions.

### 1. Qualifications

Defendant first argues that Mr. Jaques is unqualified to offer his opinions, which are entirely based on his past experience working as a security officer on a cruise ship, on the following issues: the slipperiness of the deck or associated fungus coating the deck; the presence of any mechanical grease; the poor mopping with oily or dirty mops; the issue of Defendant's purported notice; whether the CCTV footage of Christy Baker's fall should have been provided; accident avoidance through the use of warning signs; passengers' unfamiliarity with their surroundings on cruise ships; the slip resistance of the pool deck; or the use of improper cleaning products to clean the deck. Remarkably, Plaintiff's response fails to directly address the majority of Defendant's challenges to Mr. Jaques' expert opinions. Nonetheless, Plaintiff contends that "[n]either expert witness is qualified to testify in his personal opinion or expert opinion on the coefficient of friction or whether this Lido Deck area was slippery or not when Plaintiff fell."[6] Aside from asserting that

---

[6] Throughout her response, Plaintiff presents numerous arguments that attempt to rehash her challenges to Dr. Hejzlar's testimony. *See generally* ECF No. [93]. However, because the Court has already addressed the admissibility of Dr. Hejzlar's opinions above, it need not entertain these repetitive arguments in resolving Plaintiff's Motion.

14

Mr. Jaques is unqualified to testify as to whether the pool deck was slippery, the only argument Plaintiff presents in support of Mr. Jaques' qualifications is that his "opinions [are] based on decades of experience on Risk Management Accident Avoidance." ECF No. [93] at 3. Yet, this statement alone, without any supporting citations to Mr. Jaques' report, resume, or testimony, falls woefully short of satisfying Plaintiff's burden here. *See Allison*, 184 F.3d at 1306 ("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence."). Thus, on this basis alone, Defendant's Motion is due to be granted.

   **2. Reliability**

Assuming, however, that Mr. Jaques were qualified to testify as an expert, Defendant argues that Mr. Jaques' opinions are unreliable because they are not based upon any valid methodology. Specifically, Defendant contends that Mr. Jaques admitted during his deposition that he could not opine as to any black grease or oil on the pool deck, and further asserts that any opinions on the "leaching" of the teak deck and any opinions concluding that the area of Plaintiff's fall was slippery due to pooling water and/or fungus are not based on science. Likewise, according to Defendant, Mr. Jaques' opinions on crewmembers' cleaning procedures and on passengers' alleged inattention to their surroundings while on cruise ships are unreliable because the opinions are not founded upon any scientific data or proper methodology. Finally, Mr. Jaques cannot opine that Defendant had actual or constructive notice of the dangerous condition based on false assumptions or legally inadequate facts surrounding Christy Baker's incident.

As Defendant correctly notes, Mr. Jaques' report fails to cite to any scientific testing, peer-reviewed materials, data, or other pertinent sources as the basis for his opinions. *See generally* ECF No. [80-1]. Likewise, Mr. Jaques testified at his deposition that he did not inspect the Carnival

*Paradise* or perform any testing on its flooring, he did not consult any books, articles, studies, or reports, nor did he do any independent research in order to form his opinions. ECF No. [80-2] at 31:21-32:23, 35:19-36:19, 39:24-40:19. Rather, Mr. Jaques' opinions are premised entirely upon his experience and his observations or inferences derived from the CCTV footage of Plaintiff's fall and Mr. Jaques' interview with Christy Baker, *see, e.g.*, *id.* at 123:1-24, with no clear explanation of any connection between his experiences and his ultimate opinions. In addition, Defendant points out that Mr. Jaques is no stranger to *Daubert* challenges to his flawed methodology and unhelpful opinions.[7] Interestingly, rather than address how Mr. Jaques' experience-based opinions are methodologically sound, Plaintiff simply reiterates all of the facts in evidence that she believes supports his conclusions.

Upon review of the record presented, the Court agrees that Mr. Jaques' opinions suffer from serious and fatal methodological flaws. As another district court in the Southern District succinctly explained:

> Mr. Jaques' methodology suffers from many of the same deficiencies identified in *Farley*. His expert report simply lists a number of conclusory statements without any foundation. He does not demonstrate whether he performed any analysis nor does he indicate whether his opinions were subject to any verification or peer review, or how his experience specifically informed his opinions. Neither his report nor his testimony references a single study, article, or authority to support his opinions. *See* [*Johnson*, 2007 WL 9624459, at *7] (finding that "Plaintiff's assertions fall far short of demonstrating *how* Jaques' experience leads to his conclusions and opinions, *why* his experience is a sufficient basis for his opinions, and *how* his experience is reliably applied to the facts of Plaintiff's case.") (citations omitted).

---

[7] *See, e.g.*, *Horne v. Carnival Corp.*, No. 1:16-cv-21842-JLK, 2018 WL 4623527, at *3 (S.D. Fla. Sept. 26, 2018) (granting motion to exclude Mr. Jaques' testimony); *Jordan v. Celebrity Cruises, Inc.*, No. 1:17-20773-CIV, 2018 WL 3584702, at *12 (S.D. Fla. July 25, 2018) (same), *report and recommendation adopted*, No. 17-20773-CIV, 2018 WL 4776336 (S.D. Fla. Sept. 21, 2018); *Leroux v. NCL (Bah.) Ltd.*, No. 15-23095-CIV, 2017 WL 2645755, at *10 (S.D. Fla. June 19, 2017) (same); *Farley v. Oceania Cruises, Inc.*, No. 13-20244-CIV, 2015 WL 1131015, at *9 (S.D. Fla. Mar. 12, 2015) (same); *Umana-Fowler v. NCL (Bah.) Ltd.*, 49 F. Supp. 3d 1120, 1124 (S.D. Fla. 2014) (same); *Johnson v. Carnival Corp.*, No. 07-20147-CIV, 2007 WL 9624459, at *7 (S.D. Fla. Dec. 19, 2007) (same).

> The advisory committee notes for Rule 702 further illustrate how Mr. Jaques' reliance on his experience, and the various items mentioned in Plaintiff's response, fail to satisfy the reliability prong of *Daubert*:
>
>> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'
>
> *Sorrels v. NCL (Bahamas) Ltd.*, 2013 WL 6271522, at *6 (S.D. Fla. Dec. 4, 2013) (quoting Fed. R. Evid. 702 advisory committee notes (2000 amends.) (emphasis added)). Most of Mr. Jaques' opinions and testimony are not "tethered to any supporting materials or sources" as there are no studies, peer-reviewed materials, treatises, sources, data nor anything else underlying his views. *Farley*, 2015 WL 1131015, at *7. Instead, his opinions are conclusory statements regarding Defendant's fault that [are] not tied to any methodology. Moreover, Mr. Jaques does not explain why the items he relied upon—in addition to his experience— provide a sufficient basis for his opinion, especially in light of the fact that they merely lead to legal conclusions.

*Webb v. Carnival Corp.*, 321 F.R.D. 420, 429-30 (S.D. Fla. 2017).

The circumstances in the instant case, and the flaws in Mr. Jaques' methodology, are materially indistinguishable from those described above. Accordingly, consistent with the reasoning in *Webb* and numerous other cases in this District, the Court concludes that Mr. Jaques' opinions do not satisfy the reliability requirement of *Daubert* because they lack any proper methodological foundation. Thus, Defendant's Motion is granted on this basis as well.

### 3. Helpfulness

Finally, assuming Mr. Jaques satisfied *Daubert*'s qualification and reliability prongs, the Court turns to the third prong. Defendant argues that Mr. Jaques' opinions are unhelpful to the trier of fact because they are improper legal conclusions, and they opine on lay matters for which an expert is not needed. Plaintiff seemingly agrees that any conclusions of law should be stricken, *see* ECF No. [93] at 4, but nonetheless defends each of the opinions in the report.

Initially, it is evident to the Court that Mr. Jaques' opinions addressing Defendant's duty of care, assigning fault to Defendant, and indicating that Defendant had notice of the dangerous condition each impermissibly opine on the ultimate legal conclusions at issue in this case. *See Ryken v. Celebrity Cruises, Inc.*, No. 18-cv-25152, 2019 WL 5485177, at *6 (S.D. Fla. Sept. 10, 2019) (striking expert report that was "replete with legal conclusions instructing the jury that Defendant was solely responsible for creating and failing to remove a hazardous condition and that Defendant's actions and inactions were the sole cause of Plaintiff's injuries," and noting that these opinions improperly tell the trier of fact how the expert thinks it should rule); *O'Malley v. Royal Caribbean Cruises, Ltd.*, No. 17-21225-CIV, 2018 WL 2970728, at *4 (S.D. Fla. June 13, 2018) ("Mr. Gras' generic opinions are intertwined with legal conclusions that Defendant was negligent and that the vessel's personnel caused Plaintiff's injuries. Therefore, we conclude that Mr. Gras may not testify that Defendant was at fault or that Defendant breached its duty of care."); *Higgs v. Costa Crociere S.p.A. Co.*, No. 15-60280-CIV, 2016 WL 4370012, at *7 (S.D. Fla. Jan. 12, 2016) (concluding that Mr. Jaques' opinions that a defendant "is at fault" or that its crew is "careless," and testimony concerning the applicable legal standard, i.e., that a defendant is "legally required to exercise at least 'reasonable care the safety' of the passengers in question," all constitute unhelpful and impermissible legal conclusions that should be stricken); *see also Webb*, 321 F.R.D. at 427 ("Because Mr. Jaques' expert report and testimony—with respect to allegations that Defendant is withholding video footage from Plaintiff in violation of federal law—is nothing more than a legal conclusion and lacks any credible support other than pure speculation[.]"). Thus, these opinions are unhelpful and, as such, are inadmissible.

Moreover, the bulk of Mr. Jaques' remaining opinions are on matters that are not beyond the understanding of a lay person, such as the conditions on which Plaintiff slipped in the CCTV

18

footage. *See Farley*, 2015 WL 1131015, at *9 ("Having determined that Mr. Jaques' methodology is not reliable, the Court agrees with the defendant that his opinions will not assist the trier of fact."); *Mendel v. Royal Caribbean Cruises Ltd.*, No. 10-23398-CIV, 2012 WL 13129839, at *5 (S.D. Fla. Jan. 9, 2012) (expert testimony is unhelpful where "the basis for [Mr. Jaques'] opinion that the deck was a high traffic area that was difficult to maneuver was the video of Mrs. Mendel's fall"), *report and recommendation adopted*, No. 10-23398-CIV, 2012 WL 13129834 (S.D. Fla. Feb. 22, 2012); *St. Cyr v. Flying J, Inc*, No. 3:06-cv-13-J-33TEM, 2008 WL 2608127, at *6 (M.D. Fla. June 29, 2008) ("[T]he Eleventh Circuit follows the generally accepted rule that expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves."). The trier of fact "does not need Mr. Jaques to view videos and pictures or review other admissible evidence, such as of industry standards or guidelines, to determine if Defendant violated a duty it owed to Plaintiff," and it "is just as capable as Mr. Jaques at evaluating Plaintiffs narrative and theories of liability." *Horne*, 2018 WL 4623527, at *2. Therefore, Defendant's Motion is granted as to the issue of unhelpfulness because "[t]he Court finds that the evidence upon which Jaques relied in forming his opinions and conclusions is well within the understanding of the average layperson." *Johnson*, 2007 WL 9624459, at *7.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion, **ECF No. [78]**, is **DENIED**.
2. Defendant's Motion, **ECF No. [80]**, is **GRANTED**.

Case No. 19-cv-22932-BLOOM/Louis

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 23, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record