UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 19-cv-22932-BLOOM/Louis**

MINDY EASTERWOOD,

     Plaintiff,

v.

CARNIVAL CORPORATION,

     Defendant.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Plaintiff Mindy Easterwood's Motion for Summary Judgment on the Issue of Duty Pursuant to Fed. R. Civ. P. 56, ECF No. [76] ("Plaintiff's Motion"), and Defendant Carnival Corporation's  Motion for Summary Judgment, ECF No. [82] ("Defendant's Motion"), (collectively, the "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Plaintiff's Motion is denied and Defendant's Motion is granted in part and denied in part.

### I.   BACKGROUND

On July 16, 2019, Plaintiff initiated the instant action against Defendant for personal injuries she sustained while onboard Defendant's cruise ship. ECF No. [1] ("Complaint"). The Complaint alleges that, on June 7, 2019, while walking on the pool deck of the Carnival *Paradise* cruise ship, Plaintiff stepped on what appeared to be mechanical grease, slipped, and fell, thereby sustaining serious injuries. *Id.* ¶¶ 9-11, 14. Based on these allegations, the Complaint asserts a single count of maritime negligence against Defendant, alleging that Defendant breached its duty

of care by failing "to provide a non-skid deck, keep that deck area clear of black grease and/or oil and to employ lifeguards or pool attendants to carry out frequent inspections so as to warn of slippery areas, and remove grease and oil." *Id.* ¶ 12; *see generally id.*

With regard to the instant Motions,[1] Plaintiff has filed its Motion, ECF No. [76], along with its corresponding Statement of Undisputed Facts, ECF No. [77] ("Plaintiff's SMF"). Defendant filed its Response, ECF No. [101] ("Defendant's MSJ Response"), and its Response to Plaintiff's SMF, ECF No. [102] ("Defendant's SMF Response"). Plaintiff also filed a Reply, ECF No. [113] ("Plaintiff's MSJ Reply"). Likewise, Defendant has filed its Motion, ECF No. [82], with its corresponding Statement of Material Facts in Support of its Motion, ECF No. [81] ("Defendant's SMF"). Plaintiff filed a Response, ECF No. [95] ("Plaintiff's MSJ Response"), together with its Response to Defendant's SMF, ECF No. [96] ("Plaintiff's SMF Response"). Finally, Defendant filed a Reply in support of its Motion, ECF No. [109] ("Defendant's MSJ Reply"), and a Reply Statement of Material Facts, ECF No. [108] ("Defendant's SMF Reply").

## II.  MATERIAL FACTS

Based on the parties' respective statements of material facts in support of and in opposition to the Motions, along with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

### A.  Christy Baker's Fall

On June 7, 2019—the same day as Plaintiff's accident—another passenger on the Carnival *Paradise*, Christy Baker ("Ms. Baker"), reported falling in the same spot on the pool deck

---

[1] This Court, prior to considering the instant Motions, issued an Order, ECF No. [120], denying Plaintiff's Motion for Sanction for Spoliation and Adverse Inference, ECF No. [75]. Furthermore, in its Omnibus Order on *Daubert* Motions, ECF No. [122], the Court denied Plaintiff's Motion to Strike Carnival Corporation Expert Witness Zdenek Hejzlar, Ph.D. ("Dr. Hejzlar"), ECF No. [78], and granted Defendant's Motion *in Limine* Under *Daubert*, ECF No. [80], to preclude Plaintiff's expert witness, Randall Jaques ("Mr. Jaques"), from offering expert testimony.

approximately one hour before Plaintiff's accident. ECF No. [81-3] at 7:15-20. Ms. Baker testified that, immediately after falling, she was escorted by an unknown crewmember down to the infirmary, which was closed at the time. *Id.* at 17:13-18. At the infirmary, Ms. Baker was approached by Nurse Amanda Hulley ("Nurse Hulley"), who was on call. *Id.* at 16:8-14; ECF No. [81-6] at 50. Ms. Baker reported pain in her wrist, and Nurse Hulley's medical report notes that Ms. Baker's wrist exhibited "no obvious deformity" and "no swelling." ECF No. [81-6] at 50. Nurse Hulley applied an ACE bandage to Ms. Baker's wrist and asked that she return to the infirmary at 3:00 p.m. to be seen by the doctor, but she never returned. *Id.* at 50-51.

The medical report notes that Ms. Baker "stated she slipped and fell on lido deck," and characterizes Ms. Baker's injury as "non-urgent." *Id.* At her deposition, Ms. Baker indicated that she thought she slipped on a puddle of water, ECF No. [81-3] at 8:1-3, and she denied ever having seen any kind of oily black substance in the area where she and Plaintiff fell, *id.* at 19:12-16. Ms. Baker also testified that she never reported the incident to security and was never questioned by any security personnel regarding the location or cause of her fall. *Id.* at 10:2-6, 17:13-24. Indeed, no official incident report was ever created for Ms. Baker's accident. *See* ECF No. [100-3] ¶ 9.

Nurse Hulley and Assistant Chief Security Officer Riemar Castano Seruelas ("ACSO Seruelas") both testified that the protocols for reporting injuries to security required that the doctor, after examining an injured passenger, call security to investigate the accident and create an incident report whenever the passenger injury requires more than first aid. ECF No. [81-6] at 27:10-18, 40:9-41:2; ECF No. [81-7] at 93:14-94:17; *see also* ECF No. [100-3] ¶ 5. Further, Defendant's Litigation Representative submitted a Declaration, stating that:

> because Ms. Baker's incident, which involved a minor wrist injury, did not require treatment beyond first aid, the investigation protocol was not triggered. To wit, Ms. Baker did not seek medical attention from the onboard doctor after receiving treatment amounting to first aid by Nurse Hulley. Ms. Baker did not return to the

Medical Center to receive treatment from the onboard doctor nor did Ms. Baker inform any Carnival personnel that she sustained a severe injury. Carnival's shipboard investigators did not create an Accident Report, take witness statements, have Ms. Baker prepare a passenger injury statement, take photographs in order to assist legal counsel, nor did they preserve CCTV footage of Ms. Baker's incident because it had no reason to anticipate litigation would ensue from Ms. Baker's incident.

ECF No. [100-3] ¶ 9.

Upon being treated by Nurse Hulley, Ms. Baker returned to the Lido Deck. ECF No. [81-3] at 16:13-14. Shortly thereafter, she witnessed Plaintiff's accident in the same area that she had previously fallen. *Id.* at 16:15-19.

### B.  Plaintiff's Fall

On June 7, 2019, within an hour of Ms. Baker's accident, Plaintiff was walking on the Lido Deck by the pool, when she stepped on some type of slippery substance, that was "not sunscreen," and fell. ECF No. [81-2] at 40:7-8, 42:22-24, 56:10-22, 57:11-12. Plaintiff testified that she had previously visited the Lido Deck and the pool area before the date of her incident and had not slipped or fallen. *Id.* at 42:22-43:9. Nonetheless, Plaintiff explained that, on the day of her accident, she slipped and fell after stepping on something slippery and oily, which she later identified as a dark black substance that seeped through her bathing suit. *Id.* at 56:10-57:12.

The CCTV footage of Plaintiff's fall depicts Plaintiff walking across the Lido Deck heading toward a dark brown spot on the floor that bordered the pool. The video also depicts the manner in which Plaintiff slipped and fell on the teakwood deck. ECF No. [89].

Nurse Hulley responded to the scene of Plaintiff's accident to administer medical assistance, and she testified that she eventually escorted Plaintiff up to the infirmary, while keeping Plaintiff's injured leg immobilized. ECF No. [81-6] at 18:20-25. Nurse Hulley also prepared a medical report on Plaintiff's injury, which prioritized the incident as "urgent," described the various steps Nurse Hulley performed in administering medical treatment, and recorded her notes

and observations. *See* ECF No. [97-5]. The medical report reflects that the doctor was immediately notified of the emergency and treated Plaintiff. *Id.* at 5. Plaintiff's Accident Injury Report and Passenger Injury Statement are also appended to the medical report. *See id.* at 12-13.

During his deposition, Plaintiff's husband, Craig Easterwood, testified that he had not previously seen any black oil on the Lido Deck, nor had he observed any crewmembers working with any sort of motor oil in the pool area. ECF No. [81-4] at 23:11-24:1. However, immediately following Plaintiff's fall, Craig Easterwood observed the presence of a black oily substance smeared across Plaintiff's legs and on the pool deck floor, which was still there when he returned to the area approximately thirty minutes later to investigate. *Id.* at 25:20-27:25. Nurse Hulley, on the other hand, testified that she could not recall seeing any black oily substance on Plaintiff's bathing suit while she was in the infirmary following her accident. ECF No. [81-6] at 58:23-59:6. ACSO Seruelas testified that he inspected the pool deck area shortly after Plaintiff's accident, but stated that he had never seen brown or black oil, grease, or other material come off the deck. ECF No. [81-7] at 35:24-36:3, 56:1-20, 68:6-22.

In June 2020, Plaintiff underwent gastric bypass surgery to address a number of different health factors, including her diabetes, morbid obesity, and worsening acid reflux. ECF No. [81-5] at 26:17-25. Plaintiff's Primary Care Physician, Jacquelyn Terry, D.O. ("Dr. Terry") testified that Plaintiff suffered from a number of pre-existing conditions, including GERD, acid reflux, and issues with weight gain, which pre-dated her accident on the Carnival *Paradise*. *See* ECF No. [97-3] at 19:8-10, 149:15-153:7. Plaintiff's bariatric surgeon, Peter Adams, M.D. ("Dr. Adams"), testified that his recommendation that Plaintiff have the gastric bypass surgery was based in part on her body mass index score indicating that she was morbidly obese, and her medical history, which included a number of significant comorbidities. ECF No. [97-4] at 14:14-17:2.

## III.  LEGAL STANDARD

The standard of review on cross-motions for summary judgment does not differ from the standard applied when only one party files such a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant

summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

Initially, the moving party bears the "responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004) ("*One Piece of Real Prop.*"). Indeed, even "where the parties agree on the basic facts, but disagree about the factual

inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

In resolving the issues presented under Rule 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356. Moreover, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *see also Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so.").

Additionally, "cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Ga. State Conf. of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345-46 (11th Cir. 2015). Indeed, even where the issues presented on motions for summary judgment overlap, a court must consider each motion on its own merits, "resolving all reasonable inferences against the party whose motion is under consideration." *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1243 (N.D. Ga. 2014)

(citing *Am. Bankers Ins. Grp.*, 408 F.3d at 1331).[2] In particular, where "the parties respond[] to each respective summary judgment motion with disputes as to the 'undisputed' facts, add[] 'material facts' of their own, and then repl[y] with subsequent objections to the other party's additional facts," the mere filing of cross motions for summary judgment is not conclusive. *Id.* Thus, where the parties disagree as to the facts, summary judgment cannot be entered unless one of the parties meets its burden of demonstrating that "there is no dispute as to any material facts with the evidence and all inferences drawn therefrom viewed in the light most favorable" to the non-moving party. *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983) (citing *M/V Nan Fung*, 695 F.2d at 1296-97).

---

[2] Indeed, the Court of Appeals for the Eleventh Circuit has explained each party's respective burden at the summary judgment stage:

> When the *nonmoving* party has the burden of proof at trial, the moving party is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." Instead, the moving party simply may "'show[]'—that is, point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 324. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. *Id.* at 331 (Brennan, J., dissenting). If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial. Fed. R. Civ. P. 56(e); *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). If the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," *Celotex*, 477 U.S. at 323, the moving party is entitled to summary judgment.
>
> When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it "must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331 (Brennan, J., dissenting); *see also Chanel, Inc.*, 931 F.2d at 1477. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. *See id.* at 1477. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, "come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.*; *see also* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

*United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (footnotes omitted) ("*Four Parcels*").

## IV.  DISCUSSION

In Plaintiff's Motion, she argues that summary judgment is warranted because there are no genuine issues of material fact that Defendant had notice of the dangerous condition before Plaintiff's accident and it had a duty to protect her from injury. In particular, Plaintiff argues that Defendant knew that the weathered teakwood on the Lido Deck caused a chronic slippery area, and that other passengers had previously fallen in the same area.[3] Moreover, Plaintiff maintains that Defendant was put on notice of the dangerous condition when Ms. Baker's fell on the Lido Deck, because she was escorted to the infirmary after her fall and was briefly treated by Nurse Hulley. Defendant's Motion, on the other hand, argues that summary judgment should be granted in its favor for the following reasons: (1) Plaintiff has failed to adduce any evidence that the subject condition was in fact dangerous; (2) Plaintiff has not adduced any evidence that Defendant was on actual or constructive notice of the alleged dangerous condition; (3) Defendant did not have a duty to warn of the alleged dangerous condition due to its open and obvious nature; and (4) Plaintiff fails to meet her burden of establishing causation with respect to the need for her bariatric surgery.

The Court will first address the request for judicial notice before turning to the Motions.

### A.  Request for Judicial Notice

Incorporated into Plaintiff's Motion is a request[4] that this Court take judicial notice of the

---

[3] In support of her assertion that Defendant knew of the chronic slippery spot, Plaintiff requests that this Court take judicial notice of a court appointed monitor's report from a separate judicial proceeding that discusses, in relevant part, the burning of heavy fuel oil on the Carnival *Paradise*. Because Plaintiff heavily relies on this report throughout her briefing on the Motions, the Court will first address the request for judicial notice before turning to the Motions.

[4] The Court reluctantly addresses this issue, despite Plaintiff's failure to submit any substantive briefing, or to cite to a single source of law in support of her request for judicial notice. However, the Court admonishes Plaintiff for the woefully inadequate attempt to move for judicial notice. Moreover, the Court reminds Plaintiff yet again that "judges 'are not like pigs, hunting for truffles buried in briefs,'" and that it is Plaintiff's responsibility to properly and thoroughly brief her alleged entitlement to the relief she seeks in her motions. *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

First Annual Report of the Court Appointed Monitor (2017-2018) in *United States v. Princess Cruise Lines, Ltd.*, No. 16-20897-CR-SEITZ (S.D. Fla. Apr. 10, 2019), ECF No. [105] ("CAM Report").[5] Plaintiff cites to the CAM Report's finding that, while docked in Tampa, Florida, in October 2017, the Carnival *Paradise* was cited for burning heavy fuel oil in violation of pollution regulations due to a cooling system valve malfunction onboard the vessel. *See* ECF No. [79-9] at 123. Plaintiff now requests that the CAM Report be judicially noticed because the burning of heavy fuel oil on the Carnival *Paradise* is one possible source of the motor oil compound found on Plaintiff's bathing suit after her fall in this case. *See* ECF No. [113] at 8.

Federal Rule of Evidence governs a court's ability to take judicial notice of adjudicative facts. *See* Fed. R. Evid. 201. "[A]djudicative facts are those developed in a particular case," while "[l]egislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally." *Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137, 1142 (11th Cir. 2020) (quoting *W. Ala. Women's Ctr. v. Williamson*, 900 F.3d 1310, 1316 (11th Cir. 2018)); *see also* Fed. R. Evid. 201(a), advisory committee's note to 1972 proposed rule ("Adjudicative facts are simply the facts of the particular case.").

Under Rule 201, "[a] district court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either (1) 'generally known within the trial court's territorial jurisdiction' or (2) 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Grayson v. Warden, Comm'r, Ala. Doc*, 869 F.3d

---

[5] On December 20, 2016, Princess Cruise Lines, a wholly-owned subsidiary of Defendant, "pleaded guilty to seven felony counts arising out of vessel pollution and efforts to conceal that pollution carried out on the *Caribbean Princess* from 2005-2013[.]" *See* ECF No. [79-9] at 4. As a result of these environmental violations, a Court Appointed Monitor ("CAM") was retained to monitor Princess Cruise Lines' progress on its Environmental Compliance Plan, which was imposed as a condition of its probation. *Id.* at 4-5. The CAM Report that Plaintiff submits in this case was the first annual report on Princess Cruise Lines' environmental compliance efforts. *Id.* at 8.

1204, 1224-25 (11th Cir. 2017) (footnotes omitted) (quoting Fed. R. Evid. 201(b)). Accordingly,

the Eleventh Circuit has provided examples of the kinds of facts that courts may ordinarily

judicially notice: "(1) scientific facts: for instance, when does the sun rise or set; (2) matters of

geography: for instance, what are the boundaries of a state; or (3) matters of political history: for

instance, who was president in 1958." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997).

"A court may take judicial notice of appropriate adjudicative facts at any stage in a

proceeding, including at the summary judgment stage." *Dippin' Dots, Inc. v. Frosty Bites*

*Distribution, LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004) (citing Fed. R. Evid. 201(f)). "While a

court has wide discretion to take judicial notice of facts, the 'taking of judicial notice of facts is,

as a matter of evidence law, a highly limited process.'" *Id.* (quoting *Shahar*, 120 F.3d at 214)

(citing Fed. R. Evid. 201(c)). "The reason for this caution is that the taking of judicial notice

bypasses the safeguards which are involved with the usual process of proving facts by competent

evidence in district court." *Shahar*, 120 F.3d at 214.

> In order for a fact to be judicially noticed under Rule 201(b), indisputability
> is a prerequisite. 21 C. Wright & K. Graham, *Federal Practice and Procedure:*
> *Evidence* § 5104 at 485 (1977 & Supp. 1994). Since the effect of taking judicial
> notice under Rule 201 is to preclude a party from introducing contrary evidence
> and in effect, directing a verdict against him as to the fact noticed, the fact must be
> one that only an unreasonable person would insist on disputing. *Id.* If it were
> permissible for a court to take judicial notice of a fact merely because it has been
> found to be true in some other action, the doctrine of collateral estoppel would be
> superfluous. *Id.* at 256-57 (footnote omitted). Moreover, to deprive a party of the
> right to go to the jury with his evidence where the fact was not indisputable would
> violate the constitutional guarantee of trial by jury. *Id.* at 485. *Accord United States*
> *v. Aluminum Co. of America*, 148 F.2d 416, 446 (2d Cir. 1945) (L. Hand, J.).
> . . . . [A] "court may take judicial notice of a document filed in another court
> 'not for the truth of the matters asserted in the other litigation, but rather to establish
> the fact of such litigation and related filings.'" [*Liberty Mut. Ins. Co. v. Rotches*
> *Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)] (citation omitted).
> Accordingly, a court may take notice of another court's order only for the limited
> purpose of recognizing the "judicial act" that the order represents or the subject
> matter of the litigation. *See United States v. Garland*, 991 F.2d 328, 332 (6th Cir.
> 1993) (citation omitted); *Colonial Leasing Co. v. Logistics Control Group Int'l*,

> 762 F.2d 454, 459 (5th Cir. 1985); *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172-73 (10th Cir. 1979). *See also ITT Rayonier, Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981) (court took notice of settlement in related proceeding rendering case at bar moot); *Moore v. Estelle*, 526 F.2d 690, 694, 696 (5th Cir. 1976), *cert. denied*, 426 U.S. 953 (1976) (court took notice of prior habeas judgment to identify issues already decided); *FDIC v. O'Flahaven*, 857 F. Supp. 154, 157-58 (D.N.H.1994) (citations omitted) (court could not judicially notice veracity of allegations in affidavits from state court case; rather it could only take notice that the affidavits were filed and the averments were made).

*United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *see also Grayson*, 869 F.3d at 1225 ("even though a court may take judicial notice of a 'document filed in another court . . . to establish the fact of such litigation and related filings,' a court cannot take judicial notice of factual findings of another court" (quoting *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998))).

Further, as a court's authority to take judicial notice is limited to noticing adjudicative facts, "[a] court may thus refuse to take judicial notice of facts that are irrelevant to the proceeding." *Howe v. City of Enter.*, No. 1:15-cv-113-JA-SRW, 2018 WL 8545947, at *8 (M.D. Ala. Sept. 17, 2018) (quoting *Martincek v. LVNV Funding, LLC*, No. 1:16-cv-03587-ELR-JFK, 2017 WL 2903356, at *2 (N.D. Ga. Mar. 16, 2017)), *report and recommendation adopted*, No. 1:15-cv-113-ECM, 2019 WL 8723922 (M.D. Ala. Mar. 12, 2019); *see also United States v. Falcon*, 957 F. Supp. 1572, 1584-85 (S.D. Fla. 1997) (because the Advisory Committee Notes to Rule 408 "define adjudicative facts as the facts of the particular case . . . which relate to the parties[,] . . . a court may refuse to take judicial notice of facts that are irrelevant to the proceeding or (in certain contexts) otherwise excludable under the Federal Rules" (citations and internal quotation marks omitted)).

With these principles in mind, the Court turns to the request for judicial notice. As an initial matter, the Court notes that Plaintiff has not demonstrated how the CAM Report, which discusses environmental citations that Carnival *Paradise* incurred almost two years before the date of Plaintiff's injury, is relevant to this case. Indeed, the Court fails to see any connection between the

conduct at issue in the CAM Report and the facts presented in the instant action. Rather, Plaintiff's request for judicial notice appears to be an improper attempt to resolve disputed issues of fact in this case without adequately litigating the issue. As such, Plaintiff's request for judicial notice must be denied, as it seeks judicial notice of facts that are not relevant to this matter.

Plaintiff's request for judicial notice of the CAM Report is due to be denied for the additional reason that the CAM Report is not a document that can be judicially noticed. Specifically, Plaintiff does not ask this Court to take judicial notice of the CAM Report for the limited purpose of recognizing either the "judicial act" that the order represents or the subject matter of the litigation. *Jones*, 29 F.3d at 1553. Instead, Plaintiff's request for judicial notice aims to introduce this document for the truth of the matters asserted therein—namely, using the finding of fact that Defendant burned heavy fuel oil in 2017 as proof of the presence of motor oil on the Lido Deck at the time of Plaintiff's fall in 2019—which is at odds with the clear caselaw in this Circuit on judicial notice. *See id.*; *see also see also Thorpe v. Walter Inv. Mgmt. Corp.*, 111 F. Supp. 3d 1336, 1350 (S.D. Fla. 2015) (taking judicial notice of filings in other court cases but only "for the limited purpose of establish[ing] the fact of such litigation and related filings, and not the truth of the allegations contained within"). Accordingly, the Court denies Plaintiff's request to take judicial notice of the CAM Report.[6]

## B. General Maritime Negligence Claim

As the instant action concerns a maritime negligence claim, the Court will briefly explain

---

[6] As Plaintiff's request for judicial notice is denied, the Court, in resolving the parties' Motions below, will not address the remaining arguments presented in Plaintiff's Motion concerning the CAM Report. In the same vein, the Court will disregard any facts or arguments that rely upon Mr. Jaques's opinions, as he was previously stricken as an expert witness. *See* ECF No. [122]. Likewise, in light of its prior rulings in this case, the Court will not rehash any arguments relating to the admissibility of Dr. Hejzlar's expert opinions or the reliability of his coefficient of friction testing, nor will it entertain arguments that Defendant spoliated evidence by failing to preserve Ms. Baker's CCTV footage. *See id.*; *see also* ECF No. [120].

the relevant framework for addressing these claims. "Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796-97 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322); *see also Looney v. Metro. R.R. Co.*, 200 U.S. 480, 486 (1906) ("A defect cannot be inferred from the mere fact of an injury. There must be some proof of the negligence."); *Miller v. NCL (Bah.) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959))), *aff'd*, 679 F. App'x 981 (11th Cir. 2017). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the

circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322.[7] "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797. "Reasonableness of care, in turn, is measured by the extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and pose greater danger to the passenger." *Miller*, 2016 WL 4809347, at *4 (citing *Reinhardt v. Royal Caribbean Cruises*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013)).

"The analysis used to determine Defendant's duty in maritime law is intertwined with the analysis of whether a dangerous condition, in fact, existed." *Id.* "A dangerous condition is one that is not apparent and obvious to a passenger." *Id.* (citing *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2009)). "Under federal admiralty law, a cruise ship has no duty to warn of known dangers that are open and obvious." *Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 866 (11th Cir. 2018) (citing *Keefe*, 867 F.2d at 1322; *see also Chaparro*, 693

---

[7] "Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). "A maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone v. Bah. Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)) (citing *Keefe*, 867 F.2d at 1322; *Rodgers v. Costa Crociere, S.p.A.*, No. 08-60233, 2009 WL 10666976, at *3 (S.D. Fla. July 6, 2009)). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)).

F.3d at 1336 (explaining that "a cruise line owes its passengers a duty to warn of known dangers").[8]

"The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller*, 2016 WL 4809347, at *4. Moreover,

> [t]o establish the owner of a ship in navigable waters breached its duty of care, a plaintiff must show: "(1) a dangerous condition existed; [and] (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013) (alteration added; citations omitted).

*Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019).

With these principles in mind, the Court turns to the present Motions.

## C. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on the issue of Defendant's duty to protect her from injury, arguing that no genuine issues of material fact exist as to whether Defendant was on actual or constructive notice of the hazardous condition.[9] Plaintiff's Motion contends that Defendant was on actual and constructive notice of the chronically slippery, weathered teakwood deck that was squirting up liquid when stepped on and failed to to sand the deck or use the vacuum to remove the water underneath the teakwood planks. Moreover, Plaintiff maintains that Defendant was also put on notice of the dangerous condition approximately an hour before Plaintiff fell when Ms.

---

[8] As the Eleventh Circuit has explained, "[a]n open and obvious condition is one that should be obvious by the ordinary use of one's senses." *Krug*, 745 F. App'x at 866 (citing *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345-46 (S.D. Fla. 2015)); *see also Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015) (noting that open and obvious conditions are "discernable through common sense and the ordinary use of eyesight"). "[Courts] evaluate whether a danger would be open and obvious from an objectively reasonable person's point of view and do not focus on the plaintiff's subjective perspective." *Krug*, 745 F. App'x at 866 (citing *Lugo*, 154 F. Supp. 3d at 1345-46).

[9] Although Plaintiff begins her Motion by noting that "the undisputed facts of record eliminate comparative negligence by Mindy Easterwood or any unnamed party," ECF No. [76] at 1, this statement is made in passing without any citations to relevant record evidence or to supporting caselaw. Additionally, Plaintiff does not raise the issue of comparative fault again throughout the remainder of her briefing on the Motions. As such, the Court need not address this issue.

Baker was escorted to the infirmary by a crewmember and reported her fall to Nurse Hulley. Plaintiff asserts that this notice is sufficient to establish that Defendant had a duty to take corrective action. She argues that, despite having sufficient notice of this hazardous area, Defendant failed to take any corrective action to protect Plaintiff from injury.

Defendant responds that Plaintiff's Motion should be denied and contends that there still exists genuine issues of material fact as to whether Defendant had actual notice of the chronic slippery area on the Lido Deck or constructive notice by way of prior similar incidents or through evidence that the danger existed for long enough to warrant corrective action. Defendant also argues that it did not owe Plaintiff any protective action because any alleged hazard was an open and obvious condition. Finally, Defendant states that there are factual disputes in this case as to whether Plaintiff was comparatively at fault for her injuries based on her inattention to her surroundings and her alcohol consumption on the day of the accident.

Plaintiff's Reply points to the deposition testimony of Craig Easterwood, Plaintiff's husband, and the report and deposition testimony of Tatyana Yeremyants of ALS Environmental Lab in Jacksonville, Florida, to support her argument that a dangerous condition existed on the Lido Deck that was caused by the presence of a greasy, oily contaminant on the teakwood planks that left brown stains on Plaintiff's bathing suit.

In analyzing Plaintiff's arguments on Defendant's duty of care, the Court will first address whether a dangerous condition existed in this case and it will then turn to whether the evidence support Plaintiff's position that Defendant had actual or constructive notice.

### 1.   Open and Obvious Dangerous Condition

As explained above, "[a] dangerous condition is one that is not apparent and obvious to a passenger[.]" *Stewart*, 365 F. Supp. 3d at 1275. "A cruise line does not need to warn passengers

or make special arrangements for open-and-obvious risks . . . . In determining whether a risk is open and obvious, we focus on what an objectively reasonable person would observe and do not take into account the plaintiff's subjective perceptions." *Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018).

Plaintiff argues that the dangerous condition was the presence of an oily substance on the deck that, when coupled with the weathering teakwood planks that squirt liquid when stepped on, created an unreasonably slippery surface, and that this hazardous area was not apparent to passengers. Defendant disputes that there was any motor oil on the deck, and takes the position that Plaintiff slipped while walking on the teakwood deck that was wet from pool water—which would have been an open and obvious condition had Plaintiff been paying attention.

Upon review of the record evidence, and drawing all reasonable inferences in Defendant's favor, the Court concludes that there is a genuine issue of material fact on whether Plaintiff slipped on motor oil or water. Namely, the following evidence reasonably supports an inference that Plaintiff did not fall on an unreasonably slippery surface, but on a normal, wet pool deck: (1) Ms. Baker's deposition testimony that she never saw any kind of black oily substance on the pool deck where she and Plaintiff fell, ECF No. [81-3] at 19:12-16; (2) Nurse Hulley's deposition testimony that she did not recall Plaintiff having any black oily substance on her bathing suit when she was in the infirmary after her fall, ECF No. [81-6] at 58:23-59:6; (3) ACSO Seruelas's deposition testimony that he inspected the pool deck after Plaintiff fell, and that he has never seen brown or black oil, grease, or other material come off the deck, ECF No. [81-7] at 35:24-36:3, 56:1-20, 68:6-22; (4) Tatyana Yeremyants's deposition testimony indicated that the lab testing of the brown substance on Plaintiff's bathing suit did not match any of the four oils used as comparison

samples,[10] ECF No. [97-5] at 13:7-14:2; and (5) Dr. Hejzlar's expert deposition testimony that the ALS Lab results of the bathing suit showed higher quanities of the motor oil substance on the clean portions of Plaintiff's bathing suit, rather than the stained portions, which suggests that these substances were not transferred from the teakwood, but rather were part of the bathing suit, ECF No. [103-1] at 44:2-6.

A reasonable trier of fact could conclude, based on the facts above, that the slippery nature of the wet teak deck was an open and obvious condition. *See Marshall v. Royal Caribbean Cruises Ltd.*, No. 0:16-cv-21140, 2017 WL 5308902, at *3 (S.D. Fla. Jan. 6, 2017) ("Under these circumstances, a reasonable person walking on an exterior deck and stairway would have perceived the outdoor conditions through the 'ordinary use of [her] senses' and would have concluded based on the circumstances as a whole that the deck's surface and steps would likely be more slippery than usual."), *aff'd*, 706 F. App'x 620 (11th Cir. 2017). As such, there are genuine issues of material fact that remain on the issue of whether a dangerous condition existed and whether it was an open and obvious condition.

### 2. Actual or Constructive Notice

Assuming the dangerous condition was not open and obvious, Plaintiff's Motion would still fail on the question of Defendant's notice. Plaintiff contends that Defendant was put on actual and constructive notice of the dangerous condition from (1) Ms. Baker reporting her fall to Nurse Hulley an hour before Plaintiff's accident occurred; and (2) its knowledge of the chronically slippery, weathered teakwood deck that required a vacuum to suck up the liquids that pooled under

---

[10] The ALS Lab results also indicate that the substance on Plaintiff's swimsuit bore the largest resemblance to used motor oil. *See* ECF No. [97-5] at 14:22-15:4. Dr. Hejzlar, however, testified that, after reviewing the ALS findings and examining the bathing suit under a microscope himself, "all the information [] I have . . . indicates to me that essentially the dark spots comes from the crystalline cellulose polymer that is a portion of the teak, and therefore it's a solid and not a liquid, which the laboratory was testing for." ECF No. [103-1] at 99:14-20.

the planks. Plaintiff's Motion, however, fails to clearly set forth her arguments on either actual or constructive notice, and it is devoid of legal citations supporting why either actual or constructive notice exists here. Instead, Plaintiff seemingly conflates the two concepts in her Motion and submits general discussions on Defendant's notice.

To prove Defendant's duty of care, Plaintiff must first establish that Defendant had actual or constructive notice of the dangerous condition. *See Horne*, 741 F. App'x at 608 ("[I]n order to have a duty to warn of a danger, the cruiseline must have 'actual or constructive notice of the unsafe condition.' Moreover, there is no duty to warn of open and obvious dangers." (citation omitted)). "Actual notice exists when the shipowner knows of the unsafe condition." *Lebron*, 818 F. App'x at 920 (citing *Keefe*, 867 F.2d at 1322). "A maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone*, 838 F.2d at 65) (citing *Keefe*, 867 F.2d at 1322; *Rodgers*, 2009 WL 10666976, at *3). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones*, 861 F.2d at 661-62).

First, with regard to Plaintiff's argument that Defendant had actual knowledge in this case because it knew of the chronic slippery spot that developed on the teakwood deck, the Court finds that Plaintiff cannot show the absence of any disputed material facts on this issue. Notably, Plaintiff relies heavily on Dr. Hejzlar's opinions that weathered teakwood can become porous and squirt up liquid when not maintained, but a review of the record reveals that this opinion is taken out of context. *See* ECF No. [103-1] at 51:7-23, 55:4-12 (discussing what can generally happen with teakwood planks as they age or when they absorb water in the context of coefficient of friction

testing). Plaintiff's attempt to rely on Dr. Hejzlar's generalized comments about teakwood to establish notice in this case is improper. "A plaintiff cannot avoid summary judgment on some generalized theory of foreseeability that is divorced from the particular events in question." *Salazar v. Norwegian Cruise Line Holdings, Ltd.*, 188 F. Supp. 3d 1312, 1318-19 (S.D. Fla. 2016); *see also id.* at 1217-18 ("[C]ourts have [] found at this stage of disposition [that] 'mere implication of actual or constructive notice is insufficient to survive summary judgment. A plaintiff must show specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action." (internal quotation marks and citations omitted)).

Plaintiff relies on two remaining pieces of evidence to support her argument that Defendant had actual notice of the dangerous condition: (1) Nurse Hulley's testimony that "the usual complaint" she hears is that a passenger fell due to water by the pool area, ECF No. [81-6] at 18:2-19; and (2) ACSO Seruelas's testimony generally describing a car-sized "water vacuum" that he saw being used on the open deck floor to suck up water from the teakwood, ECF No. [81-7] at 71:7-74:25. However, like Dr. Hejzlar's statements abstractly discussing the wear of teakwood planks over time, the testimony above is not sufficiently concrete to establish actual notice. Nurse Hulley's comment recalling past complaints of passenger falls in the pool area does not establish that Defendant was on notice of a dangerous condition on the day Plaintiff fell. Likewise, ACSO Seruelas's testimony about the water vacuum sheds no light on whether, on June 7, 2019, the teakwood deck needed to be vacuumed or was saturated with water. Thus, the Court finds that Plaintiff has not established actual notice as a matter of law.

Next, with regard to Defendant's constructive notice of the dangerous condition, Plaintiff relies primarily on the sequence of events surrounding Ms. Baker's fall and treatment by Nurse Hulley. In particular, Ms. Baker testified that, upon falling on the Lido Deck, she was escorted to

the infirmary by a crewmember, but did not recall his name or his position. ECF No. [81-3] at 10:2-11, 17:13-23, 19:21-25. This crewmember was no longer present by the time Nurse Hulley found Ms. Baker outside the infirmary. *See* ECF No. [81-6] at 33:4-11. Nurse Hulley's medical report prepared in conjunction with Ms. Baker's visit to the infirmary indicated that Ms. Baker's injury was "non-urgent," and that she reported slipping and falling on the Lido Deck, but no precise details are noted on the location of her fall. ECF No. [79-7] at 1. Nurse Hulley ultimately wrapped Ms. Baker's hurt wrist in an ACE bandage and asked her to come back to the infirmary when the doctor would be in so she could be seen, which Ms. Baker agreed to do. *Id.* Nurse Hulley called Ms. Baker later that day to follow up on her being seen by the doctor, but Ms. Baker never returned. *Id.* at 2. Neither Ms. Baker nor Nurse Hulley reported the incident to any security personnel onboard. ECF No. [81-3] at 17:13-24; ECF No. [81-6] at 33:10-11.

Further, Nurse Hulley and ACSO Seruelas both testified that the protocols for reporting injuries to security require that the doctor, after examining an injured passenger, call security to create an incident report and investigate the accident, if the injury requires treatment beyond first aid. ECF No. [81-6] at 27:10-18, 40:9-41:2; ECF No. [81-7] at 93:14-94:17; *see also* ECF No. [100-3] ¶ 5. Defendant's Litigation Representative also submitted a Declaration, explaining that:

> Ms. Baker's incident, which involved a minor wrist injury, did not require treatment beyond first aid, the investigation protocol was not triggered. To wit, Ms. Baker did not seek medical attention from the onboard doctor after receiving treatment amounting to first aid by Nurse Hulley. Ms. Baker did not return to the Medical Center to receive treatment from the onboard doctor nor did Ms. Baker inform any Carnival personnel that she sustained a severe injury. Carnival's shipboard investigators did not create an Accident Report, take witness statements, have Ms. Baker prepare a passenger injury statement, take photographs in order to assist legal counsel, nor did they preserve CCTV footage of Ms. Baker's incident because it had no reason to anticipate litigation would ensue from Ms. Baker's incident.

ECF No. [100-3] ¶ 9.

In light of its accident reporting protocols, and the fact that Ms. Baker's injury never

triggered these protocols, Defendant now argues that there are genuine issues of material fact regarding its constructive notice based on Ms. Baker's fall. Drawing all reasonable inferences in Defendant's favor, the Court agrees. Based on the circumstances surrounding Ms. Baker's fall, a reasonable trier of fact could conclude these circumstances did not impute constructive knowledge of facts that Defendant "should have known." *Guevara*, 920 F.3d at 720. In sum, because Plaintiff's Motion fails to establish the absence of any issues of material fact on Defendant's notice of the dangerous condition or its duty to protect Plaintiff, it must be denied at this stage.

### D. Defendant's Motion for Summary Judgment

Defendant's Motion argues that it is entitled to summary judgment for the following reasons: (1) Plaintiff has failed to adduce any evidence that the subject condition was in fact dangerous; (2) Plaintiff has not adduced any evidence that Defendant was on actual or constructive notice of the alleged dangerous condition; (3) Defendant did not have a duty to warn of the alleged dangerous condition due to its open and obvious nature; and (4) Plaintiff fails to meet her burden of establishing causation with respect to the need for her bariatric surgery.

Plaintiff responds that summary judgment is inappropriate because there are remaining issues of material fact as to whether Defendant had constructive notice of the dangerous condition by way of Ms. Baker's fall, the Lido Deck was an unseen danger to Plaintiff because it was unreasonably slippery and covered with a greasy oil substance, and Plaintiff's accident exacerbated her pre-existing medical conditions so much that she needed bariatric surgery.

Defendant replies that Plaintiff has not offered any evidence to demonstrate that it was on notice of the black mechanical grease on the pool deck, nor does the testimony of Ms. Baker and Nurse Hulley establish Defendant's notice of the black grease. Defendant also argues that the evidence Plaintiff presents regarding whether the dangerous condition was open and obvious or

unreasonably slippery is insufficient. Lastly, Defendant maintains that there is no evidentiary basis to support the position that Plaintiff's need for bariatric surgery was causally linked to her fall on June 7, 2019.

### 1. Open and Obvious Dangerous Condition

Defendant argues that Plaintiff has failed to submit any evidence establishing the existence of a dangerous condition on the *Paradise* teakwood deck. Alternatively, Defendant asserts that, should the Court determine that it was on notice of the danger, it nonetheless had no duty to warn because the dangerous condition was open and obvious and Plaintiff has failed to establish otherwise. Plaintiff responds that the existence of a dangerously slippery, greasy substance on the pool deck is supported by the testimony of Plaintiff and her husband, and by the ALS lab results and testimony of Tatyana Yeremyants describing the substance's resemblance to motor oil. Moreover, Plaintiff explains her position that the unseen danger in this case is not the wet pool deck itself, but rather the presence of greasy mechanical oil that rendered the pool deck unreasonably slippery beyond what a reasonable person would expect.

In arguing that Plaintiff has failed to establish the existence of a dangerous condition, Defendant correctly notes that the "mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Stewart*, 365 F. Supp. 3d at 1275 (citation omitted). "Nonetheless, Plaintiff's inability to herself 'identify whether there was a foreign substance on the floor prior to her [fall] . . . does not necessitate the conclusion that her theory of liability is entirely hypothetical.'" *Haiser v. MSC Cruises (USA) Inc.*, No. 18-cv-60964, 2019 WL 4693200, at *4 (S.D. Fla. Aug. 9, 2019) (quoting *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1093 (S.D. Fla. 2014) (finding that even though plaintiff did not personally know what caused her to slip, the evidence demonstrated a more-than-speculative likelihood that

condensation or the general condition of the tiles may have caused the floor to become slick where there was crewmember testimony on the increasing slipperiness of the floor over time)); *see also Villa v. Carnival Corp.*, 207 F. Supp. 3d 1311, 1314 (S.D. Fla. 2016) ("[T]he fact Plaintiff cannot identify the substance he slipped on, how it got there, or how long it was there, does not mean there was no dangerous condition."). Thus, Plaintiff's lack of knowledge regarding the precise nature of the greasy substance is not fatal to her negligence claim, nor is her inability to explain how it arrived on the pool deck or the length of time during which it was present.

Moreover, similar to the Court's reasoning above on Plaintiff's Motion, the record evidence in this case, when taken in the light most favorable to Plaintiff, sufficiently creates disputed issues of material fact. These disputed issues exist as to both the cause of Plaintiff's slip and fall and whether this condition was open and obvious. Specifically, Plaintiff testified that she slipped after stepping on something slippery and oily, which she later identified as a dark black substance that seeped through her bathing suit. ECF No. [81-2] at 56:10-57:12. Craig Easterwood also confirmed the presence of a black oily substance on the floor of the pool deck, explaining that the substance was all over Plaintiff's legs immediately after her fall, and that, when he came back to investigate the area where Plaintiff fell approximately thirty minutes later, the substances was still there. ECF No. [81-4] at 25:20-27:25. The ALS Lab results, which liken the substance on Plaintiff's bathing suit to motor oil, further supports the existence of genuine disputes of fact. ECF No. [97-5] at 38-88. Likewise, Tatyana Yeremyants testified that the ALS Lab results indicated that Plaintiff's bathing suit had some kind of petroleum product on it. *Id.* at 16:2-5. This evidence sufficiently raises an inference that Plaintiff did not fall on a normal wet pool deck, but rather on a pool deck covered in a greasy substance that rendered the teakwood flooring unreasonably slippery.

As this Court has previously recognized, "anomalous conditions in otherwise safe areas, such as a slippery substance on a walkway, generally are not open and obvious." *Merideth*, 49 F. Supp. 3d at 1095; *see also Snider-Hancox v. NCL Bah. Ltd.*, No. 17-20942-CIV, 2018 WL 6308683, at *3 (S.D. Fla. Sept. 26, 2018); *Gordon v. NCL (Bah.) Ltd.*, No. 18-cv-22334, 2019 WL 1724140, at *3 (S.D. Fla. Apr. 15, 2019) ("A surface that is unreasonably slippery when wet is not an open and obvious condition." (citing *Frasca v. NCL (Bah.), Ltd.*, 654 F. App'x 949, 952-53 (11th Cir. 2016))); *see also Wieters v. Carnival Corp.*, No. 16-25284-CIV, 2018 WL 4682217, at *3 (S.D. Fla. Sept. 28, 2018) ("even if [the plaintiff] had seen the water and ice, this does not necessarily mean she should have also appreciated just how slippery it made the floor").

The presence of an unreasonably slippery surface generally is not an open and obvious condition because a reasonable observer would not be alerted to the degree of slipperiness. *See Frasca*, 654 F. App'x at 953. Instead, "a reasonable person [might] have known that the deck would be slippery, but not as slippery as it actually was." *Id.* at 952-53; *see also Petersen v. NCL (Bah.) Ltd.*, 748 F. App'x 246, 250 (11th Cir. 2018) (reversing summary judgment for cruise ship on a slip-and-fall negligence case and explaining that, "although the wetness of the deck was open and obvious, the unreasonably slippery state of the deck may not have been open and obvious to a reasonable person"); *Galarza v. Carnival Corp.*, No. 15-24380-CIV, 2016 WL 7539223, at *3 (S.D. Fla. Aug. 9, 2016).

The Court, in viewing the facts in the light most favorable to Plaintiff, is satisfied that material factual disputes exist in this case. A reasonable trier of fact could find that Plaintiff slipped on an ordinary, wet pool deck that was open and obvious. A reasonable trier of fact could also find that a dangerous condition existed on the Lido Deck due to the presence of motor oil that was not immediately apparent, but that made the teakwood floor unreasonably slippery. *See Snider-*

*Hancox*, 2018 WL 6308683, at *4 ("A reasonable person may, through the ordinary use of her senses, observe and appreciate a liquid substance, but not appreciate its slippery nature of it."). This determination will center on weighing conflicting evidence and the credibility of the witnesses presented—which is not appropriate at summary judgment. At this stage, the Court concludes that genuine issues of material fact exist regarding the purported dangerousness of the wet pool deck and whether this condition was open and obvious at the time of Plaintiff's fall. *See Haiser*, 2019 WL 4693200, at *5. Therefore, Defendant is not entitled to summary judgment on this issue.

### 2. Actual or Constructive Notice

Defendant also seeks summary judgment on the question of whether it had notice of the dangerous condition—namely, the presence of heavy black grease on the deck—arguing that Plaintiff cannot provide any evidence of notice. Plaintiff again points to the circumstances of Ms. Baker's fall in the same spot on the pool deck one hour earlier, including being accompanied to the infirmary by a crewmember and reporting her accident to Nurse Hulley, and asserts that these events sufficiently establish that Defendant knew or should have known of the dangerously slippery pool deck.

As explained above, Defendant's liability for negligence "hinges on whether it knew or should have known of the dangerous condition." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020); *see also Hicks v. Carnival Corp.*, No. 19-20686-CIV, 2020 WL 4501828, at *2 (S.D. Fla. June 23, 2020). In her response to Defendant's Motion, Plaintiff appears to only assert that Defendant had constructive notice of the dangerous condition, and the Court therefore will limit its discussion accordingly.

In addition to the facts set forth above describing Ms. Baker's fall and the failure to trigger

Defendant's accident reporting protocols, Plaintiff cites to the deposition testimony of Ms. Baker and Nurse Hulley to support her contention that Defendant had constructive notice. Ms. Baker's testimony establishes that Defendant, through Nurse Hulley and/or the crewmember who escorted Ms. Baker to the infirmary, knew of the dangerous condition and failed to investigate or take any corrective measures in response. Nurse Hulley's testimony confirms that Defendant was on notice that passengers had previously reported slipping and falling near the pool and that Ms. Baker had fallen by the pool on the day in question, but failed to investigate the area. *See* ECF No. [81-6] at 18:2-19, 33:10-11. Plaintiff also emphasizes Ms. Baker's testimony where she repeatedly confirmed that she fell in the same spot on the Lido Deck as Plaintiff—a fact that Defendant has hotly disputed throughout these proceedings. *See* ECF No. [81-3] at 7:15-22, 12:14-19, 16:20-23. Further, Plaintiff relies on Ms. Baker's testimony that a crewmember escorted her down to the infirmary immediately after her fall as additional evidence that Defendant should have known of the accident and investigated it accordingly. ECF No. [81-3] at 17:13-23.

For the purposes of Defendant's Motion, the Court will construe the ambiguous portions of Ms. Baker's testimony explaining where her accident occurred in Plaintiff's favor. Likewise, to the extent that Defendant disputes Ms. Baker's statement that she was escorted to the infirmary by a crewmember, the Court draws reasonable inferences about this crewmember in the light most favorable to Plaintiff. Upon review of this evidence, the Court is satisfied that the trier of fact could reasonably make a finding of constructive notice. That is because Defendant, by way of Nurse Hulley and the other crewmember, should have known of the unreasonably slippery pool deck and of Ms. Baker's fall one hour before Plaintiff's, on the same vessel and in the same location of the pool deck as Plaintiff's fall, and should have taken steps to investigate the area. *See Plott v. NCL Am., LLC*, 786 F. App'x 199, 203 (11th Cir. 2019) ("Drawing all reasonable inferences in Plott's

favor, as we must, a reasonable factfinder could conclude that those crewmembers knew or should have known about the wet Conservatory floor and should have either removed the hazard or warned Plott of it."); *see also Williams v. Carnival Corp.*, 440 F. Supp. 3d 1316, 1322 (S.D. Fla. 2020) ("Under these circumstances, and in light of Plaintiff's testimony, the pictures she provided, and that Carnival had multiple employees working close to the Red Frog Rum Bar trained to look for and remedy wet decks quickly, a reasonable jury could find that Carnival had constructive notice of the hazard."); *Thomas v. NCL (Bah.) Ltd.*, 203 F. Supp. 3d 1189 (S.D. Fla. 2016) (holding that evidence a substance was on floor for 15 to 20 minutes was sufficient to establish material issue of fact on constructive notice). Resolution of Defendant's arguments challenging its constructive notice would require this Court to make impermissible credibility determinations and to weigh the facts in evidence. Therefore, the Court concludes that there are genuine issues of material fact regarding Defendant's notice of the dangerous condition.

### 3. Causation

Finally, Defendant takes the position that Plaintiff's bariatric surgery was an elective procedure with no causal connection to her fall. Further, Defendant's Motion asserts that Plaintiff has not—and cannot—submit any evidence establishing the requisite causation between her accident and the need for bariatric surgery. As such, Defendant argues that granting summary judgment on causation is appropriate in this case. Plaintiff, however, cites to the deposition testimony of Dr. Terry, Plaintiff's primary care physician, and Dr. Adams, Plaintiff's bariatric surgeon, to support her position that disputes of material fact remain as to the existence of a causal link between Plaintiff's accident and her bariatric surgery. Remarkably, however, Defendant's Motion fails to cite to any legal authority in support of its summary judgment request on causation, nor does Plaintiff's response.

Case No. 19-cv-22932-BLOOM/Louis

Under admiralty law, the plaintiff must show that the defendant's negligence actually and proximately caused the plaintiff's injury. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). To prove causation, a plaintiff must establish "a cause and effect relationship . . . between the alleged tortious conduct and the injury" – otherwise referred to as "cause-in-fact" or "but-for" causation – as well as the "foreseeab[ility]" of the "conduct in question" producing the alleged harm – i.e., "proximate causation." *Ho v. Royal Caribbean Cruises Ltd.*, 2020 WL 3314184, at *2 (S.D. Fla. 2020) (citing *Bell v. Beyel Bros., Inc.*, No. 2:16-cv-14461, 2017 WL 1337267, at *3 (S.D. Fla. Apr. 7, 2017) (internal citations omitted)). Proximate causation, otherwise referred to as "legal causation," "is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).

*Elardi v. Royal Caribbean Cruises, Ltd.*, No. 19-cv-25035, 2020 WL 6870878, at *5 (S.D. Fla. Oct. 16, 2020). "Each element, including causation, is essential to Plaintiff's negligence claim." *Kellner v. NCL (Bah.), Ltd.*, No. 15-23002-CIV, 2016 WL 4440510, at *1 (S.D. Fla. Aug. 22, 2016), *aff'd*, 753 F. App'x 662 (11th Cir. 2018). Moreover, "Florida has adopted a preponderance standard for causation in [] negligence . . . actions; a mere possibility of causation is not enough." *Hessen v. Jaguar Cars, Inc.*, 915 F.2d 641, 647 (11th Cir. 1990).

"To establish causation sufficient for a negligence claim, a plaintiff 'must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result.'" *Williams v. Mosaic Fertilizer, LLC*, No. 8:14-cv-1748-T-35MAP, 2016 WL 7175657, at *17 (M.D. Fla. June 24, 2016) (quoting *Rementer v. United States*, 2015 WL 5934522, at *2 (M.D. Fla. Oct. 9, 2015)), *aff'd*, 889 F.3d 1239 (11th Cir. 2018). Indeed, because "[i]mpermissible speculation cannot support a conclusion of negligence," *Kellner*, 2016 WL 4440510, at *1, it follows that "[a] finding of proximate cause may not be based on speculation or conjecture," *Valentine v. United States*, 630 F. Supp. 1126, 1132 (S.D. Fla. 1986).

"When the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required."

*Rivera v. Royal Caribbean Cruises Ltd.*, 711 F. App'x 952, 954-55 (11th Cir. 2017) (citing *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1320 (11th Cir. 1999)); *see also Kellner*, 2016 WL 4440510, at *1 ("Expert testimony is required to establish medical causation for conditions not readily observable or susceptible to evaluation by lay persons."); *Jones v. Royal Caribbean Cruises, Ltd.*, No. 12-20332-CIV, 2013 WL 8695361, at *5-6 (S.D. Fla. Apr. 4, 2013) (explaining that injuries such as back difficulties are not readily observable). "Such expert testimony must be based on a reliable methodology and satisfy the requirements of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 585 (1993)." *Kellner*, 2016 WL 4440510, at *1; *see also Tucker v. Nike, Inc.*, 919 F. Supp. 1192, 1197 (N.D. Ind. 1995) (finding that the medical expert's opinion failed to utilize reliable methodology by failing to consider alternative causes for the injury, and concluding that the opinion was merely an unsupported speculation and a "subjective belief").[11]

"Expert testimony is required to establish medical causation for conditions not readily observable or susceptible to evaluation by lay persons." *Mann v. Carnival Corp.*, 385 F. Supp. 3d 1278, 1285 (S.D. Fla. 2019) (citing *Rivera*, 711 F. App'x at 954), *report and recommendation adopted*, No. 18-21364-CIV, 2019 WL 2254963 (S.D. Fla. May 8, 2019). Similarly, "[m]edical expert testimony is also necessary to distinguish between the ailments [a plaintiff] experienced before her fall and those experienced after—and due to—that fall." *Id.* (citing *Rivera*, 711 F. App'x at 955). And, "Florida courts have held that a plaintiff's back pain and other soft tissue injuries are

---

[11] *See also Maag v. Silversea Cruises, Ltd.*, No. 18-21535-CIV, 2019 WL 1724044, at *3 (S.D. Fla. Apr. 18, 2019) (citing *Drury v. Cardiac Pacemakers, Inc.*, 2003 WL 23319650, at *3 (M.D. Fla. June 3, 2003) ("In a negligence case, in order to establish causation, expert testimony is necessary."); *Marking v. Novartis Pharm. Corp., Inc.*, 2002 WL 32255405, at *3 (S.D. Fla. Feb. 12, 2002) (finding that a plaintiff is required to introduce expert testimony to establish medical causation); *Scott v. United States*, 127 F. Supp. 422, 424 (N.D. Fla. 1955) ("[I]t has been consistently held that whether there was a causal connection between an accident . . . [and a sustained injury] . . . is a question with respect to which only medical experts with training, skill, and experience could . . . express an intelligent opinion")), *report and recommendation adopted*, No. 18-21535-CIV, 2019 WL 2255017 (S.D. Fla. May 10, 2019).

not readily observable medical conditions." *Rementer*, 2015 WL 5934522, at *3; *see also Jones*,

2017 WL 1396477, at *9. Thus, "under Florida law, lay testimony is legally insufficient to support

a finding of causation where the medical condition involved is not readily observable." *Rementer*,

2015 WL 5934522, at *3.[12] In other words, "[s]ummary judgment is appropriate where no such

testimony is available." *Marking*, 2002 WL 32255405, at *3.

Here, Dr. Terry and Dr. Adams both recognized that Plaintiff suffered from numerous

medical conditions that predated her accident, such as diabetes, GERD, being overweight,

heartburn and acid reflux issues, anxiety, and depression, to name a few. *See, e.g.*, ECF No. [97-

3] at 172:3-8; ECF No. [97-4] at 23:1-9. Further, Dr. Terry testified that these co-morbities were

resurfacing in more serious forms after Plaintiff's accident, and recognized that her overall health

had worsened. ECF No. [97-3] at 188:16-189:7. Similarly, Dr. Adams stated that his decision to

perform Plaintiff's surgery was based upon the fact that she met all the health and weight criteria

that would support receiving bariatric surgery, and he explained that Plaintiff would benefit from

the surgery because it offered "results in resolution of diabetes or remission of diabetes in about

---

[12] There are important distinctions between lay witnesses, treating physicians testifying as lay witnesses, and expert witnesses.

> A lay witness may only testify to opinions or inferences that are rationally based on the witness's perception, helpful to a clear understanding of the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702. *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (citing Fed. R. Evid. 701). "[T]he ability to answer hypothetical questions is the essential difference between expert and lay witnesses." *Id.* (alteration and quotation marks omitted).
>
> A treating physician testifying as a lay witness may testify about the cause of an injury if knowledge of causation was necessary for the physician to treat the patient or make decisions about treatment. *Wilson v. Taser Int'l*, 303 F. App'x 708, 712-13 (11th Cir. 2008); *Carideo v. Whet Travel, Inc.*, No. 16-23658-CIV, 2018 WL 1367444, at *12-13 (S.D. Fla. Mar. 16, 2018).

*Huddleston v. United States*, No. 2:19-cv-14048, 2019 WL 6879741, at *1 (S.D. Fla. Dec. 17, 2019).

90 percent of patients. It also helps them lose about 70 percent of their excess body weight, which improves their overall health, longevity, decreases their risk of cardiac disease, complications from diabetes, early death, [and cancer.]" ECF No. [97-4] at 14:14-24, 16:19-25. Dr. Adams also testified that the purpose of the surgery was to try and relieve Plaintiff of some of the stressors relating to her weight gain, the exacerbation of her other chronic underlying medical conditions and comorbidities, and the mental and emotional distress of her orthopedic injury and treatment. *Id.* at 126:1-127:15. Plaintiff now argues that the testimony above raises issues of material fact about whether she can establish a causal link between her accident and the bariatric surgery because her weight gain, worsening and compounded medical issues, and deteriorating mental health were all linked to and aggravated by her post-injury stress.

The Court finds that these arguments lack merit in this case. In particular, Plaintiff's position suffers from at least one glaring flaw—namely, that Plaintiff never disclosed any expert medical witnesses to opine on the causation throughout the course of these proceedings. Yet, Plaintiff's medical issues are not, by their very nature, the type of injuries that can be readily observed by a lay person. Rather, in order to prove causation, Plaintiff must present testimony on medical causation from an expert witness who satisfies the *Daubert* requirements for reliability and relevance. However, there is no indication that the opinions Plaintiff relies on for causation were formed using any readily identifiable methodology or specialized expertise, nor do they account for possible alternative causes of injury to determine the appropriate degree of medical causation attributable to Plaintiff's accident. Indeed, under Florida law, proffering Dr. Terry and Dr. Adams's lay witness testimony on causation here would be inadmissible and legally insufficient to support a finding of causation. Moreover, Plaintiff's failure to disclose any medical expert witness in this case solidifies the fact that there is no record evidence that can demonstrate

Case No. 19-cv-22932-BLOOM/Louis

the causal connection between Plaintiff's accident and her bariatric surgery. *See Mann*, 385 F.

Supp. 3d 1286. Accordingly, the Court grants Defendant's Motion, but only to the extent that it is

entitled to partial summary judgment for Plaintiff's inability to prove the requisite causation

between her accident on the Lido Deck and her bariatric surgery.

## V.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Plaintiff's Motion for Summary Judgment on the Issue of Duty Pursuant to Fed. R.

Civ. P. 56, **ECF No. [76]**, is **DENIED**.

2.   Defendant's Motion for Summary Judgment, **ECF No. [82]**, is **GRANTED in part**

**and DENIED in part**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 1, 2020.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record