UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-22932-BLOOM/Louis

MINDY EASTERWOOD,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's Motion *in Limine*, ECF No. [83] ("Motion"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is granted in part and denied in part.

### I. BACKGROUND

The Court assumes the parties' familiarity with the facts of this case. Defendant moves *in limine* as to the following matters:

1. Plaintiff's treating doctors cannot testify about causation if they did not prepare Rule 26 Expert Reports;

2. Plaintiff should be precluded from discussing environmental issues related to the Carnival Pride while docked in Tampa pursuant to Rule 403; and

3. Should Plaintiff attempt to introduce evidence of "phantom damages," then Defendant should be permitted to introduce evidence of write-offs.

The Court considers each matter in turn.

## II. LEGAL STANDARD

"In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prods. Liab. Litig.*, Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). Likewise, "[i]n light of the preliminary or preemptive nature of motions in limine, 'any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited.'" *Holder v. Anderson*, No. 3:16-cv-1307-J-39JBT, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) (quoting *Miller ex rel. Miller v. Ford Motor Co.*, No. 2:01-cv-545-FtM-29DNF, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004)); *In re Seroquel Prod. Liab. Litig.*, 2009 WL 260989, at *1 ("The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*." (citing *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989))).

Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence. Fed. R. Evid. 401, 402; Advisory Comm. Notes, Fed. R. Evid. 401 ("The standard of probability under the rule is 'more probable than it would be without the evidence.'"); *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013). A district court may exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *Patrick*, 513 F. App'x at 886 (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011); *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010)). Rule 403's "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001). The movant has the burden to demonstrate that the evidence is inadmissible. *Gonzalez*, 718 F. Supp. 2d at 1345.

### III. DISCUSSION

#### A. Plaintiff's treating doctors testifying as to causation

Defendant seeks to preclude Plaintiff's treating doctors from testifying regarding causation, the need for future medical or surgical intervention, and the cost of future surgery. Moreover, Defendant seeks to preclude any cumulative testimony**.** As Plaintiff has withdrawn Mark Freeman, D.O. and Chris Robinson, M.D., as witnesses, *see* ECF No. [94], the Motion relates to Plaintiff's treating physicians, Justin Dunn, M.D., David Snider, P.T., Ph.D, Jacquelyn Terry, D.O. and Peter Adams, M.D. The Motion attaches Plaintiff's Amended Rule 26 Disclosures. *See* ECF Nos. [83-1, 83-2]. Plaintiff responds that she complied with Federal Rule of Civil Procedure 26(a)(2)(C) in disclosing their medical records, each doctor appeared at deposition and "[t]here was no need for Rule 26 reports, as neither was retained, nor was any objection raised that a formal report must have been provided to prove obvious treatment and causation." *Id*. at 3.

There is no dispute that Plaintiff's treating physicians did not provide expert reports in this case. Federal Rule of Civil Procedure 26 requires a party to disclose to the other parties the identity of any witness it may use at trial to present expert testimony. *See* Fed. R. Civ. P. 26(a)(2). To make

a proper disclosure, parties must disclose an expert's identity "accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B). The written report must contain an array of information, including a "complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and the witness' qualifications, lists of cases where the witness testified as an expert, the expert's fee arrangement, and exhibits used to summarize or support the expert's opinions. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1). The non-disclosing party bears the burden of showing that the failure to comply with Rule 26 was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009).

While Defendant's Motion does not make it entirely clear which opinions it seeks to preclude, "if a treating physician's opinion is based on information outside of his or her personal observations, the treating physician's opinion is inadmissible unless the physician provides a written expert report in compliance with Rule 26(a)(2)(B)." *Id.* (citing *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317-18 (11th Cir. 2011)). "Any testimony about the underlying cause of the patient's injury would be a hypothesis, and 'the ability to answer hypothetical questions is the essential difference between expert and lay witnesses." *Pringle*, 2019 WL 6723822, at *7 (citing *Williams*, 644 F.3d at 1317-18). The Eleventh Circuit notes that "when a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony, and it must comply with the requirements of Rule 702 and

the strictures of *Daubert*." *Williams*, 644 F.3d at 1317-18. Treating physicians who are not properly disclosed as experts are precluded from opining on the issue of causation. *Chapman v. Proctor & Gamble Distrib., LLC*, 766 F.3d 1296, 1316 n.23 (11th Cir. 2014). While the plaintiff's treating physicians are permitted to discuss the treatment and care provided, and any future surgical intervention the Court cautions regarding testimony about the underlying cause of the Plaintiff's injury. Moreover, as discussed in the Court's Omnibus Order on Summary Judgment, Dr. Terry and Dr. Adams's lay witness testimony on the causal connection between Plaintiff's accident and her bariatric surgery will not be permitted. *See Mann v. Carnival Corp*, 385 F. Supp. 3d 1286. As stated, it entirely clear what further opinions Defendant seeks to preclude regarding the necessities and related costs of treatment. As such, the Court will address the testimony at the time of trial. The Motion is granted in part and denied in part as to this matter.

**B. Plaintiff is precluded from eliciting testimony about environmental issues related to the Carnival Pride or Carnival Paradise**

Defendant's past environmental violations are not relevant to the Plaintiff's injury or any facts in this case. As the Court addressed in its Omnibus Order on Summary Judgment, ECF No. [131], Plaintiff fails to provide any basis to permit testimony or evidence about the environmental issues. The Motion is granted as to this matter.

**C. Should Plaintiff attempt to introduce the totality of her medical bills, then Defendant is permitted to introduce evidence of write-offs**

The Eleventh Circuit in *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295 (11th Cir. 2020), addressed the issue, namely, "how to calculate past medical expense damages in a maritime tort action where, as has become common, there is a dramatic disparity between the amount a

healthcare provider bills a plaintiff for treatment and the amount her insurer actually pays the provider in satisfaction." *Id.* at 1308.

*Higgs* addressed the appropriate calculation for past medical expense damages, in light of the significant deviation between the amounts paid versus amounts billed that have become common in modern healthcare, and held "that the appropriate measure of medical damages is a reasonable value determined by the jury upon consideration of all relevant evidence. Both the amount *billed* by healthcare providers and the amount *paid* by insurers are admissible as relevant to the question of fixing reasonable value." *Id.*

Critically, in applying the collateral source rule to permit the introduction of evidence on the amount paid, the Eleventh Circuit rejected any bright-line cap to the calculation of medical damages based on the amount paid, and concluded instead that the jury should be presented with *all* relevant evidence in determining the reasonable value of the medical services received. *Id.* at 1314-16. Specifically, the *Higgs* Court emphasized:

> The resolution of this question turns on the construction of a principle of tort law known as the collateral source rule. The collateral source rule is both a substantive principle of damages and an evidentiary rule. In its substantive role, the collateral source rule provides that a plaintiff is entitled to recover the full value of the damages caused by a tortfeasor, without offset for any amounts received in compensation for the injury from a third party (like an insurance company or a family member). *See Bourque v. Diamond M. Drilling Co.*, 623 F.2d 351, 354 (5th Cir. 1980); Restatement (Second) of Torts § 920A(2) ("Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."). In its evidentiary role, the collateral source rule bars the admission of evidence of payments made by third parties. *Bourque*, 623 F.2d at 354 ("[T]he rule prohibits the introduction of evidence offered to show that [a plaintiff] already has been compensated for his injuries.").

> *6 The collateral source rule is thus an exception to the basic tort principle that damages are designed to make the plaintiff whole—the rule allows a plaintiff to recover damages for a harm for which she has already been compensated. In fact, it makes her more than whole. 25 C.J.S. *Damages* § 189 ("The collateral-source rule is an exception to the general rule of damages preventing a double recovery by an injured party, or in other words, it is an exception to the general rule that in a tort action, the measure of damages is that that will compensate and make the plaintiff whole."). But the law conceptualizes the collateral source payment as necessarily a windfall—after all, a party other than the victim or the alleged tortfeasor has voluntarily chosen to bear the costs of the victim's injury—that is better awarded to the plaintiff than the tortfeasor. *See Sweep v. Lear Jet Corp.*, 412 F.2d 457, 459 (5th Cir. 1969) (summarizing justifications for the collateral source rule). Moreover, the rule is understood to avoid discouraging plaintiffs from prudently paying for insurance by limiting their recoveries, and it deters negligence by punishing tortfeasors for the full amount of their wrongdoing. *Id.*
>
> It is also well established that the collateral source rule—both in its substantive and evidentiary roles—applies to maritime tort cases. *See Bourque*, 623 F.2d at 352, 354. Its proper application to contemporary medical expenses is a vexing question, however. *See McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1169 (D. Nev. 2014) ("As controversial as the collateral source rule is, whether the rule should apply to 'write-downs' is even more so."). It is uncontested that as a substantive, general matter, the collateral source rule applies to the calculation of Higgs's medical damages. That is, Higgs is entitled to recover medical damages over and above the amount she paid out of pocket, even though those costs were settled by her insurer. Both parties agree—as they must—that Higgs is entitled to recover some amount for which United Healthcare was solely responsible. Thus, in some real way, she is *going* to receive a windfall. The question before us is how much, and how that figure should be calculated.

*Id.* at 1310-11 (footnote omitted).

Additionally, while this method of computation necessarily contemplated introducing to the jury evidence of discounts or write offs made by third parties, it did not otherwise alter the basic principles that underlie the collateral source doctrine. *See id.* at 1316 ("In this way, admitting evidence of the paid amount—which could have been paid by the plaintiff (indeed, part of it was), the insurer, or anyone else—does not violate the letter or the spirit of the collateral source rule. It is simply a figure, described as the total actual amount of payment, that provides a benchmark for the jury's consideration of the reasonable value of a provider's medical services."). Ultimately, the "guiding principle is that plaintiffs are entitled to recover the reasonable value of treatment for injuries they have sustained, regardless of whether their medical expenses have been paid and by whom." *Id.* at 1311.

To the extent that the Defendant reads *Higgs* in a manner that would permit a tortfeasor to set off payments made by third parties in order to reduce its own liability amount, that reading is clearly contrary to *Higgs*' holding and to the collateral source rule. As the Eleventh Circuit emphasized, "[i]n its substantive role, the collateral source rule provides that a plaintiff is entitled to recover the full value of the damages caused by a tortfeasor, *without offset for any amounts received in compensation for the injury from a third party* (like an insurance company or a family member)." *Id.* at 1310 (emphasis added). Furthermore, the jury's entitlement to consider evidence of a healthcare write-off in determining the reasonable value of a plaintiff's medical damages has no impact on a tortfeasor's ability to reduce its liability by amounts paid from collateral sources. "In other words, because the amount billed does not create a debt in any meaningful sense, the write-off is not a reduction of debt in any meaningful sense . . . ." *Id.* at 1315. Thus, the Motion is granted in part as to this matter.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [83]**, is **GRANTED in part and DENIED in part** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 1, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record